Edward J. Greenfield, J.
The defendant, a savings and loan association, seeks to justify its ignoring of an assignment of the account of one of its depositor members and the paying out of the funds in the account to a creditor of the assignor, on the grounds that plaintiff, the assignee, held the assignment merely as collateral and never having complied with the defendant’s by-laws in becoming a “ member ” of the association, remained an “ unrecognized transferee ”. ,
The dispute arises from the following factual situation: The Rocldedge Development Corp., which maintained an account with the Metropolitan Savings and Loan Association, had to post a subdivision bond with a town in Putnam County in the penal sum of $55,000. Plaintiff was the surety on the bond. Rocldedge, on March 2, 1961, assigned its account in the Metropolitan Savings and Loan Association, which then amounted to *457 $5,500, to plaintiff as collateral. The passbook was turned over to plaintiff, and defendant duly acknowledged that it had received written notice of the assignment on March 6, 1961.
Two years later, in February, 1963, the New York City Sheriff’s office, on behalf of M. L. Grant, Inc., a judgment creditor of Rockledge, served an execution on the defendant savings and loan association. The association certified that it then had in its possession money belonging to Rockledge then amounting to $5,690.49. Despite the prior notification that the account had been assigned, the association in March, 1963, turned over the funds deposited in the Rockledge account to the Sheriff.
Rockledge had also defaulted under its contract with the township, which thereupon, on August 21, 1963, commenced an action against it and the surety on the performance bond to recover $55,000. As a result, the surety company was compelled to pay out $40,000 on the bond, and sought to realize on its collateral. On October 14, 1963, it wrote to the savings and loan association, asking it to turn over the funds in the Rockledge account, and plaintiff was then informed that the sum had previously been paid out to the Sheriff. This action was thereupon commenced.
The defendant savings and loan association, in answer to plaintiff’s claim of conversion, asserts three affirmative defenses — that there never was a valid transfer of the Rockledge account to plaintiff, that the account was turned over to the Sheriff pursuant to court order, and that at the time of the turnover plaintiff had not yet sustained a loss.
It is clear that if a valid assignment of the depositor member’s interest in the savings and loan account had been made to the surety as collateral, the surety as assignee would be entitled to priority over the subsequent claim of an attaching judgment creditor. (Kniffin v. State of New York, 257 App. Div. 43; Goldfarb v. C. & K. Purchasing Corp., 170 Misc. 90; Manufacturers Trust Co. v. Shapiro, 82 N. Y. S.. 2d 250; 3 N. Y. Jur., Assignments, § 69.)
Once the defendant had been notified that Rockledge had assigned its interest in its account to plaintiff, any transfer of the account to any other person was at its peril. (Becker v. New Penn Development Corp., 269 App. Div. 395; Goldfarb v. C. & K. Purchasing Corp., supra.) In the Goldfarb case, as here, the defendant, after notice that a sum due the assignor had been assigned to the plaintiffs, nevertheless paid over the sum to an attaching creditor pursuant to court order. Even though the plaintiffs knew of the creditor’s proceeding, it was held that *458 having been put on notice of the assignment defendant should have acted to assail the attempted attachment. Plaintiffs were not bound in any way by such an order, and so the defendant, which had paid out pursuant to the order of attachment, was compelled to pay the same indebtedness twice.
The same situation prevails here. Defendant, with full knowledge of plaintiff’s interest, allowed a subsequent creditor' to attach the funds of the-debtor in its possession, without either' resisting those- claims or notifying the plaintiff of what was happening so that it could come in and protect its own position. Under such circumstances, defendant took the risk that it might be paying the wrong creditor, and subjected itself to potential double liability.
Confronted now with the claim of the plaintiff as assignee, defendant seeks to escape liability by asserting that the assignment was legally ineffective, and could be ignored, because plaintiff had not complied with the internal regulations of the savings and loan association. Technically, savings and loan associations are composed of ‘ ‘ members ’ ’ who continue as such until their “ shares ” have been paid, withdrawn or transferred. (Banking-Law, § 378, subd. 2, cl. 1.) The terms “ member ” and “ share ” are synonymous with the terms “depositor” and “savings account” for savings banks. (Banking Law, § 378, subd. 10.)
■ Section 376 (subd. 1, -par.-h) of the Banking Law permits the by-laws of savings and-loan associations to prescribe the conditions upon which shares may be transferred. The defendant so provided in section 1 of article VIII of its by-laws: “ A member-may transfer any or all of his shares in person, or by proxy on written assignment, provided the transferee has made proper-application for and has been accepted as a member of the Association ’ ’.
While plaintiff had notified -the association of the assignment, it never applied for membership and its application was never-approved, and so, argues the association, the purported transfer, like the earth in the beginning, was inchoate, formless and void. As between plaintiff and Rockledge, the assigner, the assignment was complete, and Rockledge had divested itself of all its right, title and interest in and to the funds on deposit with the defendant. Despite this divestiture, could defendant nevertheless treat that assignment as inferior to the claim of a later Rockledge creditor because plaintiff had not complied with the association rules respecting transfer of. membership % I think not. -
The bundle of rights comprised' in the Rockledge deposit in the savings and loan association included not only the claim to *459 the funds, and the right of withdrawal and transfer, but by virtue of the special laws applicable to savings and loan associations the additional incidents of “ membership ” in the association, in common with all other depositors. The privilege of membership carried with it certain voting rights, and privileges on liquidation as well as the potential obligation to pay additional dues. Defendant could properly be concerned about the identity of those assuming those additional rights and obligations, which would affect the fundamental nature of its business, and properly, desire to pass upon the acceptability of such persons. But plaintiff was not concerned with maintaining membership in the association, with voting, or exercising any of the other rights of members except the right of withdrawing the funds to satisfy an outstanding obligation. Defendant could have no legitimate concern with or objection to plaintiff’s right to terminate the account and withdraw and funds on deposit.
Indeed, when notified of the assignment, the association duly acknowledged it, but despite the fact that there was nothing in the passbook to inform anyone that a transferee was supposed to apply for and be approved as a member, it did nothing further to indicate that anything more was required. The association remained mute, and when the attaching creditor sought the funds, silence again prevailed. The association informed neither creditor of the existence of a competing claim to the Bockledge account. Then, without making any objection that the attaching creditor or the Sheriff had not attained the status of a full-fledged member, it supinely turned over the funds to this claimant-come-lately. Taken either as a classic case of estoppel, or as an illustrative course of conduct demonstrating that the membership application requirement was a complete afterthought to cover an egregious error, defendant is hardly in a position to assert that noncompliance with this rule known only to itself could defeat the claim of a prior assignee, and elevate a subsequent claim of a general creditor to superior status. As in Myers v. Albany Sav. Bank (270 App. Div. 466) insistence here upon literal compliance with the by-laws would be unreasonable and inequitable. The power of the court to dispense with such literal compliance may be inherent or it may be statutory, but clearly it exists. (See Matter of Dumpson v. Empire City Sav. Bank, 44 Misc 2d 8; Banking Law, § 238, subd. 3.) The fact that the attaching creditor was given the funds pursuant to court order is no defense where defendant never gave plaintiff an opportunity to contest that order. (See Goldfarb v. C. & K. Purchasing Corp., 170 Misc. 90, supra.) CPLR 6204 provides that a person who, pursuant to an order of attachment, delivers *460 property to a Sheriff in which a defendant has an interest, is discharged from his obligation to defendant — but that does not help the association here when it turned property over to the Sheriff inwhich it had been informed the debtor had relinquished all its interest.
One other point remains for. disposition — defendant’s argu-, ment that despite the assignment plaintiff had no right to the funds on deposit until after its loss had been established. The assignment was absolute in form and in prcesenti in terms. Certainly the assignment was given as collateral, but if subsequent creditors could assert superior rights to the account because the loss was not finalized, then the security the assignment purported to give was illusory, and the collateral was worthless. That is not, and never has been, the law. (See 6 C. J. S. 1150, Assignments, § 92; Fairbanks v. Sargent, 117 N. Y. 320, 333, 337.) Plaintiff had every right to have the collateral held unimpaired until a loss was sustained or its risk terminated. The very nature of the surety obligation, contemplated that the risk of loss might continue for a period of several years after the execution of the assignment.
There being no issues of fact calling for trial, and the rights of plaintiff surety haying been established as against the defendant depository as a matter of law, the plaintiff is entitled to summary judgment in its favor for the sum of $5,690.49, with interest from March 7, 1963.