Edward J. Greenfield, J.
In the case of Continental Cas. Co. v. Metropolitan Sav. & Loan Assn. (46 Misc 2d 456) this court held that the savings and loan association, having turned over the proceeds of an account of one of its depositor members to an execution creditor, despite prior notification (duly acknowledged) that the account had been assigned, remained liable to the assignee, and was required to pay a judgment of $6,587.75.
This ease is the sequel to that prior action. The savings and loan association, having been subjected to double liability because it had ignored a notice of assignment, now seeks to recover from defendant, its bonding company, the amount of such judgment together with $2,500 for attorney’s fees incurred in defending the prior suit, a total of $9,087.75.
Defendant Hanover Insurance Company had issued to plaintiff herein, in consideration of premiums paid, its ‘ ‘ Savings and Loan Blanket Bond”, to indemnify the insured against “ (B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, hold-up, misplacement, mysterious unexplainable disappearance, damage or destruction, abstraction or removal from the possession, custody or control of the Insured (whether with or without negligence on the part of any Employee) and loss of subscription, conversion, redemption or *595 deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) in or on any premises anywhere, • except while in the mail or with a carrier for hire other than an armored motor vehicle company for the purpose of transportation.” It is the contention of the plaintiff that it was compelled to pay the prior judgment because the information about the prior assignment was lost, misplaced, or had mysteriously disappeared. The question for decision is whether plaintiff’s files and records are “ property ”, the unavailability of which requires the bonding company to indemnify it for any consequential loss.
Plaintiff’s testimony was to the effect that when notified that one of its accounts had been assigned, the notice of assignment is attached to the ledger card, and then placed in a red “ jacket ”, as a flag to stop payment. The association vice-president testified that he specifically recalls “jacketing” this particular account six and a-half years earlier. Some time thereafter the form of ledger card was changed, and the bank clerks were charged with the duty of transferring the information to the new cards, and if a red jacket existed, to place it around the new card. Subsequently when a judgment creditor of the original depositor sought to execute on the account, reference to the files failed to reveal any red jacket or notice of assignment. Thus, plaintiff explains, the proceeds of the account were duly turned over to the judgment creditor, it having been unaware at that time that all of the depositor judgment debtor’s interest in and to the account had been assigned to another.
A banker’s or broker’s blanket bond, such as that involved in this suit, is not, as plaintiff urges, broad insurance against the risk of loss in its banking operations. No degree of construction of alleged policy ambiguities can broaden the scope of the coverage beyond what a reasonable reading of the insurance coverages could permit. Primarily, the blanket bond is designed to protect the financial institution against the risks of dishonesty. This may be external dishonesty — robbery, burglary, larceny, theft, holdup, or counterfeiting, or it may be internal as in the case of embezzlement, forgery or employee defalcation. And because pin-pointing the exact cause of the loss or the party responsible with legal proof may so often be difficult or nearly impossible, the coverage is broadened to include loss of valuable property through destruction, misplacement, or mysterious disappearance. The bond excludes coverage for losses attributable to war, fire, lost mail, and nonpayment of loans, and does not assume responsibility for other losses which might be characterized as routine or operational.
*596 Plaintiff’s failure to give heed to the operative effect of a prior assignment, resulting in its having to pay out the proceeds of the account twice, is attributable to one of three things. Its employees either (a) failed to make the appropriate entry on the account ledger card, (b) failed to place a red jacket on the card, or (c) misplaced or misfiled the notice of assignment.
It should be abundantly clear that the failure of an employee to make a notation or otherwise perform a clerical act could not, by any semantic torturing of the insuring language, be considered a “loss of property”. Similarly, a failure to flag or jacket an account could not be considered a covered loss. But what if the ledger card, properly jacketed and containing the notice of assignment, was ‘1 misplaced ” or “ mysteriously disappeared ’ ’ with or without negligence on the part of any employee ? Would such documents and internal bookkeeping records be considered ‘1 property ’ ’ within the contemplation of the bond?
“ Property ”, the loss of which is insured against, is defined in the bond as: “ money, currency, coin, bank notes, * * * stamps * * * precious metals * * * jewelry * # * bonds, securities, evidences of debts, debentures, * * * passbooks held as collateral * * * warrants, acceptances, notes, checks, money orders, traveler’s letters of credit, warehouse receipts, bills of lading * * * insurance policies, deeds, mortgages * * * and assignments of said policies, mortgages and instruments, and other valuable papers and documents, and all other instruments similar to or in the nature of the foregoing ’ ’.
In this comprehensive cataloguing of the type of property insured, it is clear that the common characteristic of the items listed is that each of them has a value, intrinsic or symbolic. Either they are of value in and of themselves — as currency, bullion, precious metals and jewelry, or they are papers which evidence ownership of property of value — papers which are transferable, assignable or negotiable, conferring the ownership of the underlying items of value upon a proper transfer.
Is a ledger card on which an entry is made with respect to a deposit property of value ? Obviously not. It confers no rights of ownership upon the holder, it cannot be transferred, and its loss or disappearance does not change in the least the status of the debtor-creditor relationship it purports to record. It is a mere notation, a recorded description of property value with no inherent value of its own. It is a reflection in a mirror, not tangible reality.- Similarly, the red jacket which plaintiff claims disappeared, if it ever was placed on the card of the *597 account in question, and which woidd be a flag to the clerks to stop payment was not a ‘1 valuable paper ’ ’ similar to the articles of insured property enumerated in the bond. It was a simple office device to serve to call attention to a particular account, with no more value of its own than a paper clip might have when used as a flag in similar but less sophisticated circumstances. The loss of such items of no inherent value might result in a consequential loss of some proportions, just as for want of a nail a battle was once lost, but this insurance covers direct losses for the actual value of lost or stolen property, and not liability for consequential losses.
Plaintiff insists that the term “ evidences of debts ” is broad enough to comprehend the missing red jacket, which it argues was “ evidence of indebtedness of the bank to the assignee of the account ”. The analogy to invoices, guarantees, bankbooks, and letter agreements is imperfect, however. As stated by the court in United States v. Jones (182 F. Supp. 146, 149): “ the term ‘ evidence of indebtedness ’ has reference to some individual printed or written instrument for the transfer or payment of money, but contains on its face evidence of an obligation as to which some innocent person would act in relation to the terms thereof, that such document should be something other than mere evidence of a notation of a general liability for goods, wares or merchandise fraudulently purchased.” Neither the jacket nor the ledger card is an “ instrument for the transfer or payment of money ’ ’ but is at best ‘1 mere evidence of a notation of general liability ” unilaterally recorded by one party to the transaction.
While a Pennsylvania court in Commomvealth v. Imperial Woolen Co. (290 Pa. 526) did refer to entries in books of account as ‘1 evidence of indebtedness ’ ’, that was in a quite different context. The question there was whether, for purposes of levying a State tax on the indebtedness of a corporation, the corporation’s own books were admissible as evidence of its indebtedness. That is not the equivalent of a holding that a unilateral entry in a book of account is an instrument of value.
Fully contemplating the possibility that there might be extensive monetary losses as a result of loss or damage to the financial institution’s internal books and records, the defendant bonding-company explicitly limited its liability therefor. It provided: “In case of any loss of or damage to Property consisting of books of accounts or other records used by the Insured in the conduct of its business, the Underwriter shall be liable under this bond only if such books or records are actually reproduced and then for not more than the cost of the blank books, blank *598 pages or other materials plus the cost of labor for the actual transcription or copying of data which shall have been furnished by the Insured in order to reproduce such books and other records.” The original ledger card, caparisoned in its red jacket, was a record used by the insured in the conduct of its business, and there was no proof that any expenses were incurred in having it reproduced.
The only document which might come under the broad heading of “ evidences of debts ” is the original notice of assignment itself, rather than the record entries which reflect it. This was a written instrument for the transfer or payment of money, within the definition laid down in United States v. Jones (supra), evidencing ownership by the assignee of the bank deposit, and duly acknowledged by the original depositor. Without that document, the assignee would have a difficult, if not impossible, task in proving its right to the account. But even if this document, unlike plaintiff’s own records, constituted “property”, was it lost through misplacement or ‘ ‘ mysterious unexplainable disappearance ’ ’ ?
The evidence in this case was that when plaintiff was served with a Sheriff’s execution on the account on behalf of a judgment creditor of the depositor, a routine glance at the current ledger cards failed to indicate any assignment or other reason to withhold payment, and the execution was duly complied with. Seven months later, when the assignee of the account demanded payment, a search of the files was made, and plaintiff’s vice-president testified that within half an hour he found the notice of assignment attached to the original ledger card among the records stored in the basement. There was no red jacket.
Under these circumstances, it is clear that the notice of assignment was never really lost. It was in plaintiff’s premises, and in plaintiff’s files, all along. Not having been attached to the new ledger card, it may have been misplaced, but there was no loss of that particular property as a result. The bond does not insure against the consequences of temporarily mislaying a document which ultimately turns up. Misplacement or mysterious disappearance for a while is not enough to give rise to liability — the misplacement must eventuate in the property being irretrievably gone.
That is the precise point made in Manufacturers Nat. Bank of Troy v. United States Fid. & Guar. Co. (245 N. Y. 55). There a bank mislaid a warrant until it was too late to be utilized for its depositor’s benefit. It made good the loss, and sought recovery under its blanket bond, which had language almost identical to that of the bond here involved. The court declared that the *599 words “ loss ” and “ misplacement ” must be coupled together, and said (p. 59): “ It is apparent at once that the loss of a warrant carries the idea of a permanent disappearance or destruction of it; of having gone for good from possession of the holder or at least beyond recovery after careful search. Such a loss may occur through misplacement or through theft. Bobbery, larceny, burglary, theft and holdup indicate a loss occasioned intentionally; misplacement and destruction may indicate an unintentional act, but the result, nevertheless, must be a loss of the instrument.” * * *
“ This policy did not cover losses occasioned by putting a thing in the wrong place, or locating unsuitably. Something more was necessary to bring the facts within the contract; putting the warrant in the wrong place must have resulted in its loss, not merely in damage.”
“ Applying these clauses of the policy to the acts of [the bank’s employee], we find that a loss to the bank was occasioned by [the employee’s] putting the warrant in the wrong place * * * The warrant was misplaced; it was never lost; the loss to the bank was occasioned by a misplacement, but not by the loss of a warrant through misplacement. There is a vast difference. ’ ’
A similar conclusion was reached in New York Trust Co. v. Royal Ind. Co. (233 App. Div. 408). There a bank with a blanket bond virtually identical to that of plaintiff herein made a misdelivery of certain stock certificates to the wrong person. As a result it became liable to the true owner, and made claim on its bond. Even though the stock certificates there, unlike the notice of assignment here, were no longer in the possession of the bank, the court held there was no loss through misplacement, since the whereabouts of the property was ultimately rediscovered. “ The loss resulted through mistakes on the part of the employees, but the bond does not run as indemnity against those mistakes ”. (p. 411).
Since that which is found is not lost, there is no basis for recovery predicated upon a misplaced ledger card or notice of assignment. And the red jacket, which either never was placed on the account or was lost, was not property of value, but a business record on which recovery would be limited to the de minimis cost of the paper and the retranscription of data. Certainly there is no basis for recovery of attorney’s fees unless incurred in defending a claim which would constitute a valid and collectible loss under the terms of the bond. Accordingly, there must be judgment for the defendant.