**HAMILTONIAN FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation, Plaintiff-Appellant,**

v.

**RELIANCE INSURANCE COMPANY, Defendant-Respondent,**

**Helen CAREY, Third-Party Defendant.**

No. 36405.

Missouri Court of Appeals, St. Louis District, Division One.

Sept. 2, 1975.

---

Gentry, Bryant & Hereford, Stephen M. Hereford, St. Louis, for plaintiff-appellant.

Joseph L. Leritz, St. Louis, Theodore S. Martin, Clayton, for defendant-respondent.

WEIER, Presiding Judge.

Plaintiff, Hamiltonian Federal Savings & Loan Association, brought suit against the defendant, Reliance Insurance Company. Plaintiff sought recovery under an indemnity bond issued by the defendant in the sum of $8,545.61, which the plaintiff had paid to the public administrator. Defendant filed a third party petition against a third party defendant, Helen Carey (formerly Helen Lowry), alleging that should defendant, Reliance Insurance Company, be held liable to plaintiff, the third party defendant would be liable for the claim against the defendant. Motions for summary judgment filed by both the plaintiff and defendant were overruled. The parties had waived a jury trial and submitted the action on stipulated facts. Under this stipulation it was agreed defendant issued its Savings and Loan Blanket Bond with an effective date of May 20, 1968 and a limit of $1,350,000.00, agreeing to indemnify the plaintiff within its terms. At all times pertinent to this action the bond was in effect. On April 17, 1974 the trial court entered its finding and judgment for the defendant. From this order, plaintiff appeals.

Third party defendant, Helen Carey (then Helen Lowry), was appointed guardian of the estate of her three minor children by the Probate Court of St. Louis County, and in that capacity opened an account with Hamiltonian in the amount of $7,780.55. On July 23, 1965 the Probate Court entered an order restricting the deposit by Helen Lowry by subjecting $7,144.17 to withdrawal only upon an order from the court. One of plaintiff's employees was instructed to prepare the account card and to indicate thereon the withdrawal restriction. Through negligence, however, the employee failed to note the restriction and therefore

plaintiff's tellers did not receive notice of the court order. At various times in 1968 Helen Lowry withdrew $8,126.05. She did so without a court order and it was stipulated she did so without bad faith or fraudulent or dishonest intent. It was also stipulated the withdrawn funds were used solely for the benefit of her minor children.

Because of Helen Lowry's failure to file an annual settlement, she was removed as guardian of her children's estate and replaced by the public administrator, Patrick M. Fiandaca III. On August 14, 1969 the public administrator demanded that plaintiff pay him, in his official capacity as guardian, all of the money paid to Helen Lowry without a court order plus interest. And thereupon $8,545.61, a sum equal to the original deposit plus all interest had there been no withdrawals, was paid by plaintiff to the public administrator. Plaintiff then demanded reimbursement from defendant, claiming the terms of its blanket bond policy covered the plaintiff's loss. Defendant refused to comply with plaintiff's demand. Thereafter, plaintiff filed the suit against defendant from which this appeal arises.

The facts, having been stipulated, are not in dispute. So the resolution of this case must turn on the terms of the bond; the issue being whether or not plaintiff's claim was a recoverable loss within the meaning of the bond for which the parties contracted. Thus the language of the bond is crucial in determining whether plaintiff has actually suffered an indemnifiable loss. The plaintiff contends the "On Premises" clause of paragraph B of the "Insuring Agreements" section of the bond entitles them to be reimbursed for their payment to the public administrator. The bond, in part, provides:

"The Underwriter, in consideration of an agreed premium * * * agrees with the Insured, in accordance with the Insuring Agreements hereof * * * and with respect to loss sustained by the Insured at any time but discovered during the Bond Period, to indemnify and hold harmless the Insured for:

\*　\*　\*　\*　\*　\*

## ON PREMISES

(B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, hold-up, misplacement, mysterious unexplainable disappearance, damage or destruction, *abstraction or removal from the possession, custody or control of the Insured (whether with or without negligence on the part of any Employee)* * * *." (Emphasis added.)

Plaintiff argues that blanket bonds indicate wide coverage and should be construed broadly in favor of the insured; thus since the insurance contract covers "abstraction or removal from the possession" without a qualifying requirement that dishonesty must also be involved, the loss plaintiff incurred due to their employee's failure to note the account restriction is covered by the bond.

While the general rule concerning bonding contracts is that when ambiguous they will be construed against the bonding company, the company's liability cannot be extended beyond the terms of the contract. *State ex rel. State Dept. of Public Health & Welfare, Division of Welfare v. Hanover Insurance Company*, 431 S.W.2d 141, 143[3, 4] (Mo.1968); *Jordan v. United Equitable Life Ins. Co.*, 486 S.W.2d 664, 666[1, 3, 5, 7] (Mo.App.1972). In addition, before such a presumption favoring the insured can operate, the language in the contract must in fact be ambiguous and thus susceptible to different constructions; unequivocal words must be given their plain and ordinary meaning. *State ex rel. State Dept. of Public Health & Welfare, Division of Welfare v. Hanover Insurance Company*, supra at 143[1, 2]. But it is also clear that in Missouri insurance contracts must be reasonably construed consonant with the apparent objectives and intent of the parties. *Jordan v. United Equitable Life Ins. Co.*, supra at 667[8]. And finally, we note a pertinent elementary contract principle—in constru-

ing a contract, its component parts must be taken together and construed in relation to each other to determine the true intent and meaning. *Mathews v. Knoll Associates, Inc.,* 388 S.W.2d 529, 532[1] (Mo.App.1965).

■ Admittedly, no specific language in the bond requires the "abstraction or removal" to be a dishonest one. The terms, however, must not be read in isolation from the other terms of the clause and the other clauses of the contract in ascertaining the parties' intent. The other clauses of the bond include protection from fidelity losses due to a dishonest act of an employee, losses of office furnishings, supplies, and equipment due to criminal acts, losses in transit, losses through forgery, and losses due to fraud. Each of these categories of losses, however, if not dishonest by its very nature, is specifically limited by qualifying language in the relevant clause to acts involving dishonesty. Thus from an overview of the entire bond and the fact that the insured was a savings and loan association, it would seem the purpose of the contract was to secure protection from dishonest, fraudulent or criminal acts.

A bond provision identical to section (B) of the bond in question here was similarly interpreted in a New York case. Although the New York case was specifically concerned with the "misplacement or mysterious disappearance" language, the analysis is the same. Neither phrase, "misplacement or mysterious disappearance" or "abstraction or removal", when viewed alone, requires the element of dishonesty, yet the court reached that conclusion when the terms are used in the context of the bond.

"A banker's or broker's blanket bond, such as that involved in this suit, is not, * * * broad insurance against the risk of loss in its banking operations. No degree of construction of alleged policy ambiguities can broaden the scope of the coverage beyond what a reasonable reading of the insurance coverages could permit. *Primarily, the blanket bond is designed to protect the financial institution against the risks of dishonesty.* This may be external dishonesty—robbery, burglary, larceny, theft, holdup, or counterfeiting, or it may be internal as in the case of embezzlement, forgery or employee defalcation. And because pinpointing the exact cause of the loss or the party responsible with legal proof may so often be difficult or nearly impossible, the coverage is broadened to include loss of valuable property through destruction, misplacement, or mysterious disappearance." (Emphasis added.)

*Metropolitan Savings & Loan Association v. Hanover Insurance Co.,* 55 Misc.2d 593, 286 N.Y.S.2d 129, 131[1] (1967).

Regardless, therefore, of the possibility of defining "abstraction" narrowly, as to withdraw or take-away, without dishonest connotations, such a definition is not consistent with the parties' probable intent since the insured's business is that of accepting deposits, paying withdrawals, and dealing with other people's money. A Pennsylvania court in interpreting the word "abstraction" as used in a statute said that "abstraction" "is to be understood in the *popular* sense of the word and as the act of one who, with intent to injure or defraud a bank, takes or withdraws from it any of its funds and converts them to his own or another's use." (Emphasis added.) *Commonwealth v. Dauphinee,* 121 Pa.Super. 565, 183 A. 807, 813[4] (1936).

Plaintiff concedes that losses from normal banking operations are not covered by the terms of the bond. Plaintiff contends, however, that his loss was an "extraordinary" one which is covered and that it was so understood by both the plaintiff and defendant at the time of the bond's issuance. Plaintiff's argument is not persuasive. Clerical matters, such as noting restrictions on deposits, clearly are part of "normal banking operations". As the defendant points out in its brief: "[t]o carry plaintiff's argument to its logical conclusion, *any* loss suffered by the insured would be covered under the 'abstraction or removal' phrase of

Section B. \* \* \* Indeed, plaintiff must take the position that any money paid out under any circumstances falls under the phrase 'abstraction or removal' \* \* \*." Yet it is difficult to imagine that such was the intent of either party when making the contract. We must conclude then that the bond does not cover a loss due to negligence as that claimed by the plaintiff.

█ Even if we were to construe the bond to include losses not involving dishonesty, it would still not be clear that the plaintiff could recover in this action. It is a well established rule that the insured has the burden of proving that a loss occurred from causes within the terms of the insuring contract. *Bensinger v. California Life Insurance Co.*, 459 S.W.2d 511, 516[7] (Mo. App.1970). An indemnity contract against losses does not cover losses for which the indemnitee is not liable to a third person and which he improperly pays as a voluntary payment. *Paro v. Pennsylvania Railroad Co.*, 348 S.W.2d 613, 616[2] (Mo.App. 1961). Here, it would appear that the plaintiff might not have been liable to the public administrator for the funds withdrawn by the guardian, the person entitled to withdraw money from the account. It was stipulated in the statement of facts that the guardian withdrew the money without bad faith or fraudulent or dishonest intent and that it was used by her as guardian solely for the benefit of her wards and minor children.

█ While customary, it is not necessary that a guardian obtain a court order authorizing expenditures. He may take the chance of the disallowance of his accounts upon submission at time of settlement if such expenditures were not necessary and proper for the support, maintenance and education of his ward. §§ 475.120(1), 475.- 125, RSMo 1969; *DeWald v. Morris*, 397 S.W.2d 738, 742[5, 6] (Mo.App.1965). It is true that according to the statement of facts, Mrs. Carey was removed as guardian for failure to file an annual settlement, but there is no mention made of any order of the probate court requiring payment of any amount due the successor guardian as required by § 475.300, RSMo 1969. Rather, it is indicated that the successor guardian made demand of Hamiltonian for the funds withdrawn by Mrs. Carey plus interest and Hamiltonian thereupon paid him the amount here in controversy. No reference is made as to any misapplication of the funds by the guardian.

█ A volunteer who pays money in the absence of fraud or duress is not entitled to the return of his money provided he has full knowledge of the facts even though he may be mistaken as to the applicable law. An unjust demand should be resisted at the threshold of the matter. *American Motorists Insurance Company v. Shrock*, 447 S.W.2d 809, 811 (Mo.App.1969). Since by the terms of the bond defendant only agrees to indemnify plaintiff for a loss of property, it does not cover a voluntary payment made by plaintiff without liability to so pay. *Paro v. Pennsylvania Railroad Co., supra*, 348 S.W.2d 613, 616[2] (Mo.App. 1961).

█ Plaintiff also contends that its motion for summary judgment should have been sustained since there was no genuine issue of material fact. This contention is not properly before this court since the matter of the propriety of a court's action in denying a motion for summary judgment is not an appealable order. *Wilson v. Hungate*, 434 S.W.2d 580, 583[5] (Mo.1968); *Parker v. Wallace*, 431 S.W.2d 136, 137[2] (Mo. 1968); *Hoevelman v. Reorganized School District R2 of Crawford County*, 430 S.W.2d 753, 754[3] (Mo.App.1968); Rule 74.04. In support of this contention, however, plaintiff reasons that both plaintiff and defendant filed motions for summary judgment and in so doing both parties, as a part of their motions, advised the court that there was no genuine issue of fact. Plaintiff further urges that since no agreed statement of facts had been filed at that time, there was no issue as to the presence or absence of dishonesty or the use to which

Mrs. Carey put the funds. Hence at least one of the parties should have received judgment in its favor by reason of the submission under the motions based only upon the facts therein admitted to be those upon which the litigation should turn. But the court considered otherwise, denied the motions, and the parties thereupon submitted an agreed statement which included the reference to the absence of dishonest acts and the use made by Mrs. Carey of the funds. Certainly the trial court cannot be faulted for seeking all of the facts which it might reasonably consider in arriving at its final judgment. This is consonant with Rule 74.04 which requires that "a summary judgment [should not] be rendered on [any] issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." Rule 74.04(h); *Sherman v. AAA Credit Service Corporation*, 514 S.W.2d 642, 644[4] (Mo.App.1974).

The judgment is affirmed.

DOWD and RENDLEN, JJ., concur.