In the ESTATE of Dora Viola
HENDRICKSON, Incompetent,
Respondent,

v.

G. C. HENDRICKSON, Petitioner,
Appellant.

No. WD 31175.

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

Motion for Rehearing or Transfer
Denied Aug. 25, 1980.

William Brandecker, Columbia, for appellant.

Cullen Cline, Columbia, for guardian ad litem.

Elton W. Fay, Columbia, for respondent.

Before WASSERSTROM, C. J., Presiding, and KENNEDY and PRITCHARD, JJ.

KENNEDY, Judge.

The circuit court in the exercise of its probate powers denied the petition of appellant G. C. Hendrickson to be allowed to return his 72-year-old wife, under the Missouri guardianship of her daughter, to the family home in California. The petition also requested the removal of the guardian, and this, too, was denied. From this order Mr. Hendrickson has appealed to this court.

At the time of the hearing in the present proceeding—June 11, 1979—Mrs. Hendrickson was a patient at a nursing home in Columbia. She had been placed there by her daughter and guardian, Jane Foley, in July of 1978. On April 19, 1978, the probate court of Boone County, upon Jane's petition, had found Mrs. Hendrickson to be incompetent and had appointed Jane as guardian of her person and estate. At the time of the hearing in the present case, Jane had resigned as guardian of the estate but was still acting as guardian of the person.

Until October, 1977, Mrs. Hendrickson had lived with Mr. Hendrickson in their family home in San Bernardino, California. At that time, in response to urgent calls from Mr. Hendrickson and from her half-sister, Mrs. McNeer, Jane went to California and returned Mrs. Hendrickson to Missouri. Mrs. Hendrickson then stayed in Jane's home until July, 1978, when she was placed in the nursing home.

Mr. Hendrickson's calls to Jane in October of 1977 sprang from his inability to manage Mrs. Hendrickson. She was suffering from organic brain syndrome. She was vicious and violent toward Mr. Hendrickson. When Jane went to California and got her in October, 1977, she had left the family home and had been staying two weeks with a lady named Lyons. Mr. Hendrickson told Jane that she had threatened to kill him, that she hated him; that she was the children's problem and that he was going to divorce her. He could not get her to go to the doctor and could not handle her. Jane found her "bruised and confused". With reference to bruises on her body, Mr. Hendrickson explained to Jane that he had inflicted them in defending himself against her attack upon him.

In April, 1978—in the same month as the guardianship proceeding, but before it— Jane took Mrs. Hendrickson back to California briefly. The occasion for this trip was an auction sale, arranged by Mr. Hendrickson, of a collection of antiques from the Hendrickson residence. They apparently included several items of particular senti-mental value to Mrs. Hendrickson. Jane learned of the planned auction from her brother in Oregon. The sale apparently proceeded despite Jane's protests. At the time of this California trip, Mrs. Hendrickson became quite agitated, announcing a purpose to "slit (Mr. Hendrickson's) throat if she laid eyes on the son of a bitch". However, both before and after this incident, she was in a nearly perpetual state of anger toward Mr. Hendrickson until a medication was prescribed, some time later, which caused her to be more tranquil.

In April of 1978, after the California trip, Jane initiated the probate court proceedings which resulted in Mrs. Hendrickson's being declared incompetent and Jane's appointment as guardian of her person and estate. Sometime after this she was placed upon the medication earlier mentioned. In July of 1978, needing 'round-the-clock supervision, she was placed in a nursing home. She remained in the nursing home after that and was still there in June of 1979 when the present hearing was held.

After Jane's appointment as guardian in April of 1978, which was effected with Mr. Hendrickson's approval and encouragement, Mr. Hendrickson asked Jane to sign deeds to the real estate which he and Mrs. Hendrickson owned in California. Mr. Hendrickson wanted to liquidate this real estate, including the residence and another tract, and use the proceeds in an antique-buying junket to the East. The planned antique-buying trip was to be taken with his associate, identified as "Denny". Jane, after consulting her attorney, told Mr. Hendrickson that her signature would not be effective to convey California real estate. Mr. Hendrickson later told Jane he was taking Mrs. Hendrickson to California. An attorney had told him that if he could get her physically into California that it would be no problem—referring, we take it, to the conveyance of the real estate. He told Jane he was going to get her back to California "one way or another". Jane told the nursing home managers not to permit Mr. Hendrickson to take Mrs. Hendrickson away from the grounds. Mr. Hendrickson visited

Mrs. Hendrickson at the nursing home on three different occasions. He was allowed to take her to his camper, parked on the premises. Apparently he was allowed to visit with her in and about the nursing home but upon Jane's instructions was not allowed to take her from the grounds. Mr. Hendrickson told Jane he would not give Mrs. Hendrickson the medicine, that she didn't have to be on "that drug"—that he would take her to a chiropractor.

We have stated in some detail the evidence which supports the court's decision denying Mr. Hendrickson's petition. We need only summarize the evidence which tends not to support its decision.

Mr. Hendrickson, who was 75 years of age, testified that he wanted to, and was well able to care for Mrs. Hendrickson in their home in California. There were good hospitals and nursing homes close by, he testified. Mr. Hendrickson was supported in his position by Mrs. McNeer, his and Mrs. Hendrickson's daughter, and the half-sister to Jane.

Mrs. Hendrickson was placed on the stand briefly, but her testimony shows only that she was not mentally competent to make a rational decision.

The legal principles governing this dispute are not contested. The guardian of the person of the incompetent "shall take charge of the person of his ward and provide for his support and maintenance as required by this code". § 475.120, RSMo 1978. The guardian is to arrange a suitable home for an incompetent ward. *St. Vincent's Sanitarium v. Murphy*, 209 S.W.2d 560 (Mo.App. 1948). The guardian's powers in this connection, as the appellant reminds us, may not be exercised capriciously but must be reasonably exercised. The provisions for an abode for the ward are subject to the supervision of the court. *St. Vincent's Sanitarium v. Murphy, supra*; 44 C.J.S. Insane Persons § 60 (1945). The probate court will not interfere with arrangements made by the guardian within a certain discretionary range. But the probate court has power to order specific actions by the guardian, or may in a proper case re-

move the guardian. *Hamiltonian Fed. S. & L. v. Reliance Ins. Co.*, 527 S.W.2d 440, 444 (Mo.App. 1975); *In re Boeving's Estate*, 388 S.W.2d 40, 52 (Mo.App. 1965); §§ 475.110, 473.140, 475.120, 475.125, RSMo 1978.

We acknowledge the appellant's argument, eloquently made, that spouses have a right to live together. Appellant acknowledges that the guardian in the first instance and then the probate court in the exercise of its supervisory power, has the task of balancing this right against other considerations which would make cohabitation unwise.

In this case the guardian chose not to place her ward in the California home in her husband's care, but rather to place her in the nursing home in Columbia. The evidence which we have recited above indicates that the guardian's decision was a reasonable, responsible decision. The trial court heard the evidence and found it was so. In so finding we find no abuse of discretion on the part of the trial court and no occasion for appellate intrusion. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Freshour v. Schurenberg*, 495 S.W.2d 116 (Mo.App. 1973); *Nutz v. Shepard*, 490 S.W.2d 366 (Mo.App. 1973).

The judgment of the circuit court is affirmed.

All concur.