In the ESTATE OF Mykene M. POWELL and Asya M. Powell; Harry D. Williams, Appellants,

v.

Judge Ellen S. ROPER; John Lister Whiteside, Respondents.

Nos. WD 67285, WD 67286, WD 67481, WD 67482.

Missouri Court of Appeals, Western District.

Feb. 19, 2008.

Harry D. Williams, Columbia, pro se.

John Lister Whiteside, Columbia, for respondents.

Before VICTOR C. HOWARD, Chief Judge, PATRICIA BRECKENRIDGE, Judge [1] and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Harry D. Williams appeals four judgments issued by the Honorable Ellen S. Roper in the Probate Division of the Circuit Court of Boone County disapproving annual settlements and holding Appellant liable for expenditures from the estates of Asya M. Powell and Mykene M. Powell.

Ural B. Powell and Ethel Ruth Powell had one natural child and nine adopted children, including Asya and Mykene (together, "the Children"). In September 2000, Mr. and Ms. Powell passed away within three days of each other. The Children initially lived with one of their older sisters, who became the payee for the Children's social security income. They began living with Appellant and his wife, who are the Children's brother-in-law and sister, in the summer of 2001, and Appellant's wife eventually became the payee for their social security income. Appellant and his wife were appointed as co-guardians in September 2003, and Appellant was appointed as conservator of the Children's estates on December 29, 2003.

In February 2005, Appellant submitted an annual settlement for each of the Children's estates for the period from December 31, 2003, through December 31, 2004 ("the 2004 settlements"). The probate court audited the settlements, and the probate clerk informed Appellant that he should have requested prior approval from the court for the expenditures listed in the settlements. Appellant then filed a Motion to Grant Monthly Expense Allowance in the amount of $600 for each child and resubmitted the 2004 settlements on May 13, 2005.

The court held a hearing on September 26, 2005, regarding the expenditures and Appellant's motions to grant a monthly expense allowance. As a result of the hearing, Appellant was ordered to submit receipts for the expenditures. Appellant provided a partial bank statement and credit card statement, approximately 100 cash register receipts from 2004, and a "log" to organize some of the receipts.

On January 30, 2006, Appellant submitted an annual settlement for each of the Children's estates for the period from December 31, 2004, through December 31, 2005 ("the 2005 settlements"). The probate court also audited these settlements.

On February 28, 2006, the court entered its orders disapproving all of the expenditures listed in the 2004 settlements for the reason that Appellant had failed to provide "receipts that coincide with cash disbursements." The disapproved expenditures totaled $7,300 for Mykene and $7,750 for Asya. These amounts were described as "General Expenses," "school clothes," "basketball shoes and uniform," "pictures and extra school activities," "birthday," and "Christmas expenses." The court appointed a conservator *ad litem* and set a hearing date to determine Appellant's liability for the disapproved expenses.

Appellant subsequently submitted a list of 48 checks purportedly written on behalf of the Children in 2004 and 2005, copies of cancelled checks for the majority of those

---

1. Breckenridge, J., was a member of this Court at the time this case was submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this Court as a special judge for the purpose of disposition of this case.

amounts and several additional checks, and a few additional receipts and invoices to support his withdrawals from the Children's accounts.

The court held a hearing on Appellant's liability for the disallowed expenditures on June 29, 2006, and issued its orders and judgments concerning the 2004 settlements on the next day. The court found that Appellant had breached his fiduciary duties as conservator by making cash withdrawals from the Children's estates and failing to file receipts for all of those withdrawals. For Mykene, the court found that Appellant withdrew $7,300 and failed to file receipts for $6,300; for Asya, the court found that Appellant withdrew $7,750 and failed to file receipts for $6,250 of the withdrawals. Accordingly, the court disapproved the 2004 settlements and entered judgment in favor of the Children's estates and against Appellant in the amount of $6,300 for Mykene and $6,250 for Asya. The court also granted Appellant's motion for monthly expense allowance in the amount of $450 for each child effective May 13, 2005, excluding expenses for medical and dental care and for clothing and shoes, which were to be paid by check directly to the provider or vendor. The court also taxed a fee of $275 per child for the conservator *ad litem* against Appellant personally.

The court subsequently reviewed the 2005 annual settlement documents in light of the evidence that was presented at the June 29, 2006 hearing. On August 22, 2006, the court issued its judgments disallowing all of the expense credits listed in the 2005 settlements, for a total of $7,610 for each child. The disallowed amounts were described as "General Expenses," "school supplies and clothes," "spring break and shopping," "travel expenses," and "Christmas" expenses. The judgments were based on a finding that "[n]o

corresponding receipts have been filed nor was prior court approval requested." The court credited a setoff for the monthly allowance of $450 per child as of May 13, 2005, or $4,010 each, leaving a balance of $3,600 per child. Accordingly, the court entered judgment in favor of each of the Children's estates and against Appellant in the amount of $3,600 each. The court also taxed the conservator *ad litem's* costs and fees in an unspecified amount against Appellant personally.

Appellant timely appealed the two June 30, 2006 judgments and the two August 22, 2006 judgments. The four appeals were consolidated by this Court.

"A court-tried probate case is reviewed under the standard of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976)." *In re Estate of Schooler,* 204 S.W.3d 338, 342 (Mo.App. W.D.2006). "Under that standard, the probate court judgment will be sustained 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Id.* (quoting *Murphy,* 536 S.W.2d at 32).

Appellant asserts six points of error, five of which concern the court's rulings disallowing the expenditures listed in the 2004 and 2005 settlements and holding him liable for those amounts. Because his arguments on these issues are inextricably intertwined, we will address them together.

In his first point, Appellant contends that the court's orders disallowing the expenditures were against the weight of the evidence and were a misapplication of the law because the evidence clearly shows that the expenditures were made for the Children's necessaries as part of Appellant's duty as the Children's guardian. We note that the court's rulings were not based on a finding that the expenditures

were not for necessaries but, rather, that Appellant had failed to provide receipts to support the expenditures. In the second set of judgments, the court further found that Appellant had failed to request prior approval of the expenditures. Appellant attacks each of these bases for the court's judgments in Points III and II, respectively. In his fourth point, Appellant contends that the court's rulings improperly require him to expend his own resources to support the Children. Finally, Appellant argues in Point VI that the court's rulings improperly amount to a punishment or penalty assessed against him for failing to strictly follow procedures.

The probate code as it relates to guardianships and conservatorships was substantially revised in 1983. As noted by one commentator, the Guardianship Code Revision structured "the law to meet the unique needs of each distinct individual.... [T]he law has been made to fit the people it is meant to serve." John A. Borron, Jr., *The Guardianship Code Revision: An Overview*, 39 J.Mo.Bar 453, 460–61 (1983). But while the revisions were extensive, the fundamental approach to the purposes of guardianships and conservatorships, and the powers and duties of guardians and conservators, remain essentially unchanged. Thus, the pre–1983 case law generally applies equally to issues before and after the 1983 revisions.

As noted above, Appellant was appointed as both co-guardian of the Children and conservator of their estates. As guardian, Appellant is directed to "provide for the ward[s'] education, support and maintenance." § 475.120.1.[2] As conservator, Appellant is required to, "under supervision of the court, protect, preserve and manage the estate, invest it, ... account for it faithfully, [and] perform all other duties required of him by law, and at the termination of the conservatorship deliver the assets of the protectee to the persons entitled thereto." § 475.130.1. The probate code provides that "[t]he court may make orders for the management of the estate of the protectee for the care, education, treatment, habilitation, support and maintenance of the protectee ..., according to his means and obligation, if any, out of the proceeds of his estate," and that such appropriations "shall be paid from the personal property or income of the estate." § 475.125(1)-(2). These provisions were substantially the same before the 1983 amendments.[3]

■ Our Supreme Court summarized the difference between a guardianship and a conservatorship in *Williams v. Vaughan*, 363 Mo. 639, 253 S.W.2d 111 (1952):

> As guardian it was [the appellant's] duty to take charge of his ward and to arrange for a suitable home, food, clothing and other necessaries, *the reasonable value of which is a proper charge against the ward's estate.* The curator [*i.e.*, conservator] is charged with the care and management of the ward's estate, subject to the superintending control of the probate court. It is his duty to collect the assets and to make proper investments thereof, and otherwise manage the estate.

*Id.* at 113 (emphasis added). As early as 1860, the Court addressed the issue of prior approval for expenditures, stating:

> The guardian may, if he chooses, apply in the first instance for an order and

---

2. All statutory citations are to RSMo 2000 unless otherwise noted.

3. *See* §§ 475.120.1, § 475.130.1, 475.125, 475.190, RSMo 1978, RSMo 1969, RSMo 1959; §§ 457.220 & 457.260, RSMo 1949; §§ 422 & 430, RSMo 1909; Ch. 72 §§ 13 & 24, RSMo 1855.

appropriations; but if he does not, and takes the risk of having his accounts disallowed when he makes his settlements, that is his own concern, and his omission to do so is no fraud upon his award. The court, in either case, determines whether the expenditures are necessary and proper; and allowing accounts for expenditures already incurred is, in effect, the same as making a formal order for appropriations beforehand, and equally satisfies the statute. *Brent v. Grace's Adm'r*, 30 Mo. 253, 256 (1860). This Court relied on *Brent* in holding that "the absence of such a prior order does not militate against the propriety of paying for the services." *DeWald v. Morris*, 397 S.W.2d 738, 743 (Mo.App. W.D.1965). "While customary, it is not necessary that a guardian obtain a court order authorizing expenditures. He may take the chance of the disallowance of his accounts upon submission at time of settlement if such expenditures were not necessary and proper for the support, maintenance and education of his ward." *Hamiltonian Fed. Sav. & Loan Ass'n v. Reliance Ins. Co.*, 527 S.W.2d 440, 444 (Mo.App. E.D.1975); *see also Cross v. Rubey*, 206 S.W. 413, 414 (Mo.App. W.D. 1918).

As indicated *supra*, the pertinent amendments to the guardianship and conservatorship statutes in 1983 are consistent with these prior cases. For example, consistent with *Vaughan*, subsection 4 was added to § 475.120 to provide that "[a] guardian of an adult or minor ward is not obligated by virtue of such guardian's own financial resources for the support of the ward." *See also J.L.M. v. R.L.C., Jr.*, 132 S.W.3d 279, 288 (Mo.App. W.D.2004) ("Guardians are not obligated to use their personal financial resources to support their wards."). Subsection 5 was also added to § 475.130 to enumerate certain actions that a conservator may take "without

authorization or approval of the court," including to "[c]ontract for the provision of board, lodging, education, medical care, or necessaries of the protectee for periods not exceeding one year." § 475.130.5(10). "[T]he Revision infuses greater flexibility and discretion in the conservator's authority to administer a protectee's estate." *Guardianship Code Revision*, 39 J.Mo.Bar at 457.

■ In the case at bar, there is no dispute that the withdrawals from the Children's estates were for "board, lodging, education, medical care, or necessaries." Thus, under § 475.130.5 and the reasoning of *Vaughan* and *Brent* and its progeny, it is clear that the probate court erred to the extent that its judgments were based on Appellant's failure to request court approval prior to making expenditures from the Children's accounts.

■ But the court also found that Appellant failed to provide receipts for the majority of the expenditures and that, therefore, the expenditures must be disallowed. Section 475.270.1 provides that "[e]very conservator shall file with the court a settlement of his accounts once a year," and § 473.543 "lists the required contents of an annual settlement." *In re Estate of Pittman*, 16 S.W.3d 639, 643 (Mo.App. W.D.2000). "Among the essential items are 'the exact amount of principal and interest collected on each claim, and also the amount and date of each expenditure or distribution, and to whom and for what paid.'" *Id.* (quoting § 473.543.1). Section 473.543.1 further provides that "[e]ach expenditure of more than seventy-five dollars for which a [conservator] claims credit in any settlement shall be supported by vouchers executed by the person to whom the disbursement was made. The court has discretion to

require vouchers for expenditures of less than seventy-five dollars."

It is undisputed that Appellant did not strictly comply with the requirements of § 473.543.1. Appellant simply listed a "General Expenses" credit of approximately $600 for each month and several additional credits in the settlements.[4] He did not provide specific dates or payees for any of the expenditures, and he did not list the purpose of the expenditures for the bulk of the withdrawals. He also did not provide any "vouchers" for any of the amounts listed until after the probate court ordered him to do so in September 2005, and even then he only provided cancelled checks, receipts, and other documentation to support some of the expenditures. However, the court even disallowed credits for those amounts for which it acknowledged that Appellant had provided receipts. Indeed, the court stated at the hearing, "[T]here definitely were receipts that showed where that money [for certain expenditures] went." The court identified receipts for $200 for school clothes and $200 for birthday activities for Asya, as well as $100 for basketball shoes and uniform, $200 for school clothes, and $100 for Christmas expenses for Mykene, among others. Nevertheless, these precise withdrawals were disallowed in the February 28, 2006 judgments for failure to provide receipts, which the court affirmed in its June 30, 2006 judgments.

The corresponding annual settlement statutes prior to 1952 did not require "vouchers" they only required that the guardian or conservator faithfully account for the ward's income and expenditures. *See* § 475.510, RSMo 1949; § 446, RSMo 1909. In interpreting these earlier statutes, the Eastern District of this Court held that, although there must ordinarily be "evidence of reasonable value" to recover the costs of supporting a minor child, "where the value of the things furnished is a matter of common knowledge" and "all the facts and circumstances are in evidence with respect to the character and extent of the things supplied, the trial court … may determine the question of value from its own knowledge." *In re Hartle's Estate*, 236 S.W.2d 40, 41 (Mo. App. E.D.1951). The court explained, "The reasonable value of such support [is] a matter within the common experience of people generally, and the court itself [is] as well qualified to estimate the cost as … any other witness." *Id.* at 42.

As discussed *supra*, the 1983 amendments to the probate code are consistent with the proposition that the "reasonable value" of a ward's "home, food, clothing and other necessaries" are proper charges against the estate. *Vaughan*, 253 S.W.2d at 113. The addition of a "vouchers" requirement does not change this fact.[5]

4. In the 2004 settlements, there were additional credits for Mykene for $200 for "School Clothes" and $100 for "Basketball (shoes/uniform)" in November. For Asya, there was an additional credit in June for $300 for "Purchase Bedroom Set," two additional credits in October for $200 for "School Clothes" and $100 for "Pictures/extra-school activities," and one credit in December for $200 for "Birthday." The 2005 settlements listed the following additional credits for each child: $100 in March for "Spring Break Trip/Shopping," $60 in July for "Travel Expense (Youth Trip)," $150 in August for

"School supplies/clothes," and $100 in December for "Christmas."

5. In *Williams v. Estate of Williams*, 801 S.W.2d 784 (Mo.App. E.D.1991), the Eastern District of this Court entered a memorandum decision pursuant to Rule 84.16(b), affirming a judgment disallowing expenses and holding a conservator liable for breaching "her duty of producing documentation to support certain expenditures she made from Estate." *Id.* at 784. Since the disposition was by memorandum decision, there is no further discussion of the facts. A memorandum decision

■ Prior to the 1983 amendments, several courts refused to hold guardians or conservators personally liable for expenditures or obligations where they were not at fault.[6] The legislature added standards of care to the probate code in 1983, and the Southern District of this Court has interpreted those standards and held that "conservators are not held to a standard of strict liability." *In re Estate of Ayers*, 984 S.W.2d 193, 200 (Mo.App. S.D.1998). The court stated:

> We agree with the trial court's conclusion that conservators are not held to a standard of strict liability in light of the provisions of § 475.130.1, which requires that a conservator use the degree of care, skill and prudence which an ordinarily prudent man uses in managing the property of, and conducting transactions on behalf of, others, and § 475.132.2, which imposes individual liability on a conservator "only if he is personally at fault."

*Id.* The court agreed that the proper standard for conservators is one "which requires some fault or negligence on the part of the conservator before liability will be imposed." *Id.* at 198, 200. This Court has previously stated that an annual settlement is a tool "to monitor the estate's earnings and expenditures, and, consequently, the guardian's performance." *Pittman*, 16 S.W.3d at 643. Accordingly, if there have been no allegations of fault or negligence by the guardian or conservator concerning the expenditures themselves, then the mere failure to provide vouchers for all expenditures should not result in their disallowance where there is other evidence that the guardian or conservator's actions were proper.

In the case at bar, Appellant described the nature of the "general expenses" credits at the June 29, 2006 hearing. He had previously provided receipts to support some of those expenses, and he explained that many of the expenditures were made as part of running his six-person household, including groceries, utilities, etc. He also testified as to the reasons for several of the specific expenditures (Asya's bedroom set, Mykene's flute, and church donations and Christmas expenses for the Children). The evidence tends to show that the Children have been provided for "in a manner commensurate with [their] station in life in the community in which [they] lived." *In re Hartle's Estate*, 236 S.W.2d at 41. Appellant also offered evidence that the State of Missouri has determined that the average cost per year to raise a child is $7,440, which is similar to the amounts withdrawn from each of the Children's accounts. Thus, it is clear that the amounts withdrawn from the accounts are consistent with the reasonable value of the Children's necessaries.

The probate court focused on Appellant's failure to comply with the requirements for annual settlements and on the fact that Appellant withdrew cash from the Children's accounts to cover the expenses instead of writing checks for the individual expenditures. While the court was understandably concerned with ensuring that withdrawals from the Children's accounts were actually used for their necessaries,

---

entered pursuant to Rule 84.16(b) "does not constitute a formal opinion of this court, cannot be cited, and has no precedential value." *Preston v. State*, 33 S.W.3d 574, 582, n. 4 (Mo.App. W.D.2000).

**6.** *See Hamiltonian Federal Sav. & Loan Ass'n v. Reliance Ins. Co.*, 527 S.W.2d 440, 444 (Mo.App. E.D.1975) (noting that "[n]o reference is made as to any misapplication of the funds by the guardian."); *cf. In re Hoerman's Estate*, 247 S.W.2d 762, 767 (Mo.1952) (holding that statutory liability for interest is proper "where the guardian has used his ward's funds for his own benefit").

there have been no allegations that Appellant spent the funds on anything other than necessaries or that he misused the funds in any way. The probate court has already granted Appellant a monthly allowance of $450 per child that appears to be ongoing, which Appellant does not directly dispute in this appeal, and Appellant testified that he would comply with all of the rules for conservators in the future. Although we certainly do not condone Appellant's past failure to comply with the statutory requirements, to disallow the reasonable expenditures or to hold Appellant liable under the unusual circumstances of this case would work an injustice and would be contrary to the purposes of the guardianship and conservatorship statutes. Accordingly, Points I, II, III, IV, and VI are granted.

In his fifth point of error, Appellant contends that the court erred in failing to credit or reimburse him for expenditures made on behalf of the Children during the time prior to his being appointed as co-guardian in which their social security income was withheld to make up for prior overpayment.[7] He asserts that the court's "order" effectively required him to expend his own funds on the Children in violation of § 475.120.4. *See supra.* There is no express ruling on this issue in the record, and it is unclear from Appellant's testimony whether he and his wife have already been reimbursed.[8] Since the case is being remanded, Appellant may file an appropriate written claim or request seeking pay-

ment for such amounts as he claims are due. The court may then properly address the issue, including, if needed, taking additional evidence.

In conclusion, the probate court's June 30, 2006 and August 22, 2006 judgments are reversed to the extent that they disallow the expenditures listed in the 2004 and 2005 annual settlements and hold Appellant liable for those amounts and any associated costs or fees. The case is remanded for further proceedings consistent with this opinion. The judgments are affirmed in all other respects.

All concur.

---

7. Appellant made an oral request at the hearing for reimbursement for the amounts spent from July 2002 through January 2003, when the Children's monthly social security income in the amount of $568 each had been withheld to offset a prior overpayment of approximately $3,974 each. Appellant testified that he and his wife had paid for the Children's expenses entirely from their own income during that period and that the monthly expenses were between $500 and $600 per month each, or $6,000 to $7,200 total over six months for both children.

8. Appellant stated that "when the social security finally started reinstating their benefits, after the money had all been paid off, during the period of April 1 of 2002 through March of 2003, they gave each child an amount of about $3,442. But that—for that six-month period, they gave them nothing."