**Ladonna BUEHNE, et al., Appellants,**

v.

**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Respondent.**

**No. ED 88913.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 4, 2007.

---

1. All statutory references are to RSMo 2000, unless otherwise stated.

Matthew J. Devoti, St. Louis, MO, for appellant.

Scott C. Harper, Clayton, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

LaDonna Buehne, Timothy Buehne, and Cynthia Siegel (collectively referred to as "Plaintiffs") appeal from the trial court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiffs contend the trial court erred in granting summary judgment in favor of State Farm because Plaintiffs are entitled to recover the policy limits of their underinsured motorist coverage in accordance with Section 379.204, RSMo 2000.[1] We find the trial court properly granted summary judgment in favor of State Farm and affirm.

Gerald J. Buehne ("Buehne") died as a result of injuries sustained in a motor vehicle collision when the vehicle Buehne was driving was struck by a vehicle driven by Claudex Simmons ("Simmons") on March 10, 2005. Plaintiffs are Buehne's widow, LaDonna Buehne, and two children. At the time of the collision, Buehne was chief of the Affton Fire Protection District ("AFPD") and was operating a 2000 Ford Crown Victoria owned by the AFPD.

---

1. All further statutory references are to RSMo    2000 unless otherwise indicated.

At the time of the collision, Simmons was insured under a motor vehicle insurance policy issued by American International Group, Inc. and National Union Fire Insurance Company ("AIG/NUFIC"). The liability limit of the AIG/NUFIC policy was $100,000.00 per person. Plaintiffs settled with Simmons for $100,000.00, the limit of the AIG/NUFIC policy.

The AFPD insured the vehicle driven by Buehne through American Alternative Insurance Company ("AAIC"). The AAIC policy included underinsured motor vehicle coverage with limits of $1,000,000.00. Plaintiffs settled their underinsured motor vehicle claim against AAIC for $900,000.00.

Prior to March 10, 2005, State Farm issued a motor vehicle insurance policy to Buehne for a 1999 Chevy Lumina naming Beuhne and Plaintiff LaDonna Buehne as insureds. The State Farm policy had underinsured motorist limits of $25,000.00. The State Farm policy was in effect at the time of the collision. The State Farm policy used and defined "**Underinsured Motor Vehicle**" as:

a land motor vehicle:

1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and

2. whose limits of liability for bodily injury liability:

a. are less than the amount of the *insured's* damages; or

b. have been reduced by payment to *persons* other than the *insured* to less than the amount of the *insured's* damages.

(Bold and italics in original). In a situation where other underinsured motorist coverage applies, the State Farm policy provided:

**If There Is Other Underinsured Motor Vehicle Coverage**

\* \* \*

3. If the *insured* sustains *bodily injury* while *occupying* a vehicle not owned or leased by *you, your spouse* or any *relative,* this coverage applies:

a. as excess to any underinsured motor vehicle coverage which applies to the vehicle as primary coverage, but

b. only in the amount by which it exceeds primary coverage.

(Bold and italics in original). The policy further provided "**Limits of Liability**" under "**Coverage W**" including:

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured* under any worker's compensation, disability benefits, or similar law.

(Bold and italics in original).

Plaintiffs brought an action against State Farm under the underinsured motorist coverage provision of the policy. Plaintiffs filed a motion for summary judgment alleging they were entitled to receive the monetary limitations of the underinsured motorist coverage of the State Farm policy. State Farm also moved for summary judgment. State Farm alleged that because the limits of coverage under the primary policy, the AFPT's policy with AAIC with underinsured motorist coverage in the amount of $1,000,000.00, exceeded the coverage under the State Farm policy, State Farm's underinsured motorist coverage does not apply.[2] Thereafter, the

---

**2.** State Farm also argued coverage under the underinsured motorist provision did not apply

to the extent that any payment would benefit a worker's compensation carrier. At the time

trial court granted State Farm's motion for summary judgment. This appeal follows.

Summary judgment is appropriate where the motion and response thereto demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the factual record in the light most favorable to the party against whom summary judgment was granted. *Id.* The propriety of a summary judgment is purely a question of law, and our standard of review on appeal is essentially de novo. *Id.* Summary judgment is frequently used in the context of insurance coverage questions, and the interpretation of an insurance policy is a question of law. *Niswonger v. Farm Bureau Town & Country Ins. of Missouri,* 992 S.W.2d 308, 312 (Mo.App. E.D.1999).

■ In their sole point, Plaintiffs maintain the trial court erred in granting summary judgment in favor of State Farm. Plaintiffs contend they are entitled to recover the policy limits of the underinsured motorist coverage under Section 379.204. Plaintiffs maintain Section 379.204 requires that when seeking coverage under an underinsured motorist provision that is less than $50,000.00, any applicable underinsured motor vehicle coverage is construed to be "in excess" for purposes of coverage, and thus, the insurer must tender the policy limits of any underinsured motor vehicle coverage. We disagree.

Section 379.204, titled "Underinsured motor vehicle coverage—minimum coverage," provides:

> Any underinsured motor vehicle coverage with limits of liability less than two times the limits for bodily injury or death pursuant to section 303.020, RSMo, shall be construed to provide coverage in excess of the liability coverage of any underinsured motor vehicle involved in the accident.

The liability limit for bodily injury or death of one person in any one accident is $25,000.00. Section 303.020(10). Plaintiffs maintain that Section 379.204 mandates that any underinsured motor vehicle policy, including the State Farm policy in this case, provide a minimum amount of underinsured motor vehicle coverage notwithstanding any policy provision to the contrary and any recovery already received by Plaintiffs. State Farm, on the other hand, contends the primary AAIC policy underinsured limits were in excess of the underinsured limits of the State Farm policy, and thus, State Farm has no further obligation to make any underinsured motorist payments and Section 379.204 is not applicable.

■ First, we consider the State Farm policy at issue. Absent public policy considerations, an insured and an insurer are free to define and limit coverage by their agreement. *Rodriguez v. General Acc. Ins. Co. of America,* 808 S.W.2d 379, 383 (Mo. banc 1991). There are no statutory requirements in Missouri for underinsured motorist coverage. *Id.* Therefore, the existence of coverage and its limits are

of his death, Buehne was working in the course and scope of his employment. As a result, LaDonna Buehne receives $675.90 per week in worker's compensation benefits. The State Farm policy contains a provision that there is no coverage under the underinsured motorist provision to the extent that it bene-

fits any worker's compensation or disability benefits insurance company. This issue was also raised in this appeal. However, because of the direction of the analysis of this opinion and disposition, we need not discuss this worker's compensation issue.

determined by the contract entered between the insured and the insurer. *Id.*

Here, Buehne and his wife, Plaintiff LaDonna Buehne, and State Farm entered into a contract with a provision stating that where the insured is occupying a vehicle owned by another, and that occupied vehicle has a policy providing underinsured motorist coverage, the limits of the other policy are primary. The State Farm policy then only provides underinsured motorist coverage to the extent that the State Farm policy limits exceed those of the primary policy.[3] The AAIC policy provided primary underinsured motorist coverage for the vehicle operated by Buehne. The underinsured motorist coverage limits of the AAIC policy were $1,000,000.00. Plaintiffs settled their underinsured motor vehicle claim against AAIC for $900,000.00. Under the State Farm policy, because the limits of the AAIC were in excess of the limits of the State Farm policy, State Farm has no obligation to make any underinsured motorist payments.

Plaintiffs, however, argue that regardless of the State Farm policy provisions allowing for set off from other underinsured motorist coverage, Section 379.204 mandates that State Farm pay the $25,000.00 in underinsured coverage under the policy. Plaintiffs' argument is not supported by the law or statutory construction.[4]

■■■ The primary rule in statutory construction is to ascertain the intent of the legislature from the language used in the statute and, if possible, give effect to that intent. *Nelson v. Crane*, 187 S.W.3d 868, 869–70 (Mo. banc 2006). "We generally seek to ascertain the intention of the lawmakers by giving the words used their ordinary meaning, by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory or oppressive results." *State ex rel. Killingsworth v. George*, 168 S.W.3d 621, 623 (Mo.App. E.D.2005)(*citing State ex rel. Jackson County v. Spradling*, 522 S.W.2d 788, 791 (Mo. banc 1975)).

We find the terms of the statute are clear and unambiguous. Under Section 379.204, any limits of underinsured motorist coverage that are less than two times the limits for bodily injury or death pursuant to Section 303.020 are only deemed to be excess of any "liability coverage." This is to prevent a situation where underinsured coverage is $25,000 per person, and $50,000 per occurrence, which are the min-

---

3. This same State Farm provision was found to be clear and unambiguous in *State Farm Mut. Auto. Ins. Co. v. Sommers*, 954 S.W.2d 18, 19–20 (Mo.App. E.D.1997). The court in *Sommers* found under similar circumstances that because the coverage provided by State Farm did not exceed that provided by the primary policy, State Farm had no obligation to provide any further coverage.

4. There have been two cases citing Section 379.204 since its enactment in August of 1999. First, in *Melton v. Country Mut. Ins. Co.*, 75 S.W.3d 321, 326 (Mo.App. E.D.2002), the appellant argued that Section 379.204 mandated the insurance company to provide excess liability coverage. The court noted that Section 379.204 did not become effective until after the appellant's policy became effective and that the statute did not operate retro-actively. *Id.* The court stated in dicta that "Section 379.204 imposes a new duty or obligation on insurers in that it forces them 'to provide coverage in excess of the liability coverage of any underinsured motor vehicle.'" *Id.* In the second case, *Tapley v. Shelter Ins. Co.*, 91 S.W.3d 755, 763–64 (Mo.App. S.D. 2002), the court found Section 379.204 inapplicable, but stated that "if the underinsured motorist coverage was applicable here, it would, pursuant to the policy provisions, apply as excess coverage, up to the policy limits after deducting payments received from or on behalf of the tortfeasor." Aside from the statute being inapplicable, neither *Melton* nor *Tapley* dealt with situations where there was other underinsured motor vehicle coverage and worker's compensation involved.

imum amounts of liability coverage required by state law, and the insured would never collect the limits of their underinsured coverage. *See Zemelman v. Equity Mut. Ins. Co.,* 935 S.W.2d 673, 676–77 (Mo.App. W.D.1996)(*discussing Trapf v. Commercial Union Ins. Co.,* 886 S.W.2d 144, 147 (Mo.App. E.D.1994)). The statute is to protect an insured from paying premiums for underinsured coverage under which he or she would never collect. Therefore, the statute deems underinsured motorist coverage limits that are less than two times the limits for bodily injury or death to be excess for any "liability coverage." The statute does not create any similar requirement with respect to other available underinsured motorist coverage. There is nothing in the statutory language prohibiting a set off from other available underinsured motorist coverage.

Here, the language in the State Farm policy only involves a set off from other underinsured motorist coverage, and not a set off from liability coverage. Thus, Section 379.204 is not applicable in the present case. There is nothing in the statute limiting the right for an insurance carrier to set off its own underinsured motorist limits against those of another underinsured motorist insurance carrier.

The trial court did not err in granting summary judgment in favor of State Farm where State Farm was entitled to judgment as a matter of law. Plaintiffs' point is denied.

The trial court's grant of summary judgment in favor of State Farm is affirmed.

GEORGE W. DRAPER III, P.J. and PATRICIA L. COHEN, J., concur.

**1.** All rule references are to Mo. R.Crim. P.2006, unless otherwise indicated.