**OAKLEY FERTILIZER, INC., Appellant,**

v.

**CONTINENTAL INSURANCE COMPANY, Respondent.**

**No. ED 90951.**

Missouri Court of Appeals, Eastern District, Division One.

Jan. 20, 2009.

Randall D. Grady, Clayton, MO, for appellant.

Simon P. Tonkin, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Oakley Fertilizer, Inc. ("Seller") appeals from the judgment of the Circuit Court of St. Louis County granting summary judgment in favor of Continental Insurance Company. Seller argues that genuine issues of material fact existed which precluded the grant of summary judgment in favor of Continental. Continental maintains that it is entitled to summary judgment on the grounds set forth by the trial court and presents three alternative theories in support of its motion for summary judgment. We reverse and remand.

### Background

In mid–2005, Continental issued an insurance policy to Seller. The policy covered shipments of goods made in the course of Seller's business. Specifically, the policy provided:

> To cover all shipments for the Assureds [sic] own account or for the account of Owners of the cargo transported by the Assured which the Assured agrees to insure, such agreement to be made prior to any known or reported loss, or prior to or simultaneous with the sailing of the vessel.

The Continental policy also stated that coverage did not extend to shipments insured by other parties and required Seller

to notify Continental of each shipment covered by the policy.

In July 2005, Seller entered into negotiations with Ameropa North America ("Buyer") for the sale of approximately 3000 short tons of fertilizer ("the cargo") to be shipped to Buyer in Caruthersville, Missouri from New Orleans on barges operated by a third party carrier ("Carrier"). Subsequently, Seller sent a "sales contract" to Buyer, which Buyer received but did not sign or return. The sales contract memorialized the terms discussed during the parties' negotiations. The contract also included a term providing that the cargo's title and risk of loss would transfer from Seller to Buyer after Seller received "good funds" from Buyer and that "Buyer assumes responsibility of product insurance at [that] point."

In response to Seller's sales contract, Buyer emailed an electronically signed agreement to purchase the cargo ("purchase agreement") to Seller. The purchase agreement did not mention the sales contract and included the term, "$200.00/ST FOB BARGE EX NEW ORLEANS, LA".

Between August 23 and 24, 2005, the cargo was loaded onto the barges in New Orleans. On August 29, Hurricane Katrina and/or its related storms damaged the barges. Initially, Seller advised Buyer that the cargo was not damaged. Relying on this advice, Buyer tendered full payment to Seller on September 8, 2005. However, when, shortly thereafter, the cargo arrived at its destination, Buyer rejected it due to "crusty wet product." Seller later sold the damaged cargo at salvage value and issued a credit to Buyer for a partial amount of the purchase price and provided substitute fertilizer in lieu of a refund on the remaining purchase price.

After reimbursing Buyer, Seller demanded coverage under the Continental policy for the loss to the cargo. Continental denied coverage on the grounds that the cargo's title and risk of loss transferred from Seller to Buyer at the time the cargo was loaded in New Orleans, prior to the damage, and, therefore, Buyer, not Seller, was responsible for the loss.

Following the denial of coverage, Seller brought suit against Continental alleging breach of its insurance contract. Both parties filed motions for summary judgment. The trial court granted Continental's motion stating as follows:

> On the Summary Judgments of [Seller] and [Continental] having been filed and argued, the Court grants Summary Judgment in favor of [Continental] and against [Seller], and denies [Seller's] Summary Judgment against [Continental]. Substantial evidence is presented by both parties to prove that there was no agreement between the parties as to the time of transfer of cargo title and risk of loss. Pursuant to applicable U.C.C. Rules and evidence presented, the title and risk of loss transferred at the time of loading [Carrier's] barges and before the loss herein occurred.

Seller appeals.

### Standard of Review

The propriety of a summary judgment is purely a question of law, and our review of summary judgment is essentially *de novo*. *Buehne v. State Farm Mut. Auto. Ins. Co.*, 232 S.W.3d 603, 606 (Mo.App. E.D.2007). Summary judgment is only appropriate for cases where there is no genuine dispute of material fact and the underlying facts establish the right to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). The burden is on the movant to establish a right to judgment as a matter of law on the record as submitted. *Rustco Prods.*

*Co. v. Food Corn, Inc.*, 925 S.W.2d 917, 921 (Mo.App. W.D.1993). "We review the factual record in the light most favorable to the party against whom summary judgment was granted." *Buehne*, 232 S.W.3d at 606.

### Discussion

#### A. Did the Trial Court Correctly Apply Section 2–207 of the Uniform Commercial Code?

In its sole point, Seller contends that the trial court erred in granting summary judgment for Continental because genuine issues of material fact precluded the finding that Buyer, and not Seller, held the risk of loss when the cargo was damaged. Continental maintains that title and risk of loss passed to Buyer at the time the barges were loaded, and, therefore, the insurance policy does not cover the loss at issue. Simply stated, Continental's entitlement to summary judgment turns on whether the trial court correctly applied the Uniform Commercial Code when it held that: (1) there was no agreement between the parties as to transfer of title and risk of loss, and therefore (2) the title and risk of loss transferred from Seller to Buyer when the barges were loaded.[1]

Both parties agree that Seller's sales contract and Buyer's purchase agreement are the only two documents evidencing the terms of Buyer and Seller's agreement. The two contractual documents, however, contain different terms concerning the transfer of title and risk of loss. Seller's sales contract expressly provided that Seller retained title and risk of loss until Seller received payment from Buyer. The "F.O.B. New Orleans" term in Buyer's purchase agreement denoted that risk of loss transferred to Buyer when the cargo was loaded aboard the barges at the place of shipment in New Orleans.[2] The cargo sustained storm damage after the barges were loaded, but before Seller received payment from Buyer. As such, title and risk of loss transferred to Buyer *after* the loss under the sales contract's term, and *before* the loss under the purchase agreement's term.

To determine which term controlled Buyer and Seller's contract, we apply Section 2–207 of the Uniform Commercial Code, which governs transactions for the sale of goods and "provides the workable rule of law addressing the problem of the discrepancies in the independently drafted documents exchanged between the two parties." *Brown Mach., Div. of John Brown, Inc. v. Hercules, Inc.*, 770 S.W.2d 416, 420 (Mo.App. E.D.1989).

Section 2–207 provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made condi-

---

1.  Missouri has enacted the Uniform Commercial Code which is codified in Chapter 400, RSMo (2000). This opinion, for uniformity and convenience, will cite the U.C.C. provisions.

2.  The designation "F.O.B." means "free on board" and is a term of art defined by the Uniform Commercial Code. U.C.C. § 2–319(1). In relevant part, the Code provides that "when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this article ... and bear the expense and risk of putting them into the possession of the carrier[.]" Section 2–319(1)(a). Both Seller and Continental agree that the F.O.B. shipment term used in Buyer's purchase agreement is consistent with the Code's definition to the extent that it would operate to transfer the risk of loss at the time the cargo was loaded onto barges in New Orleans.

tional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

U.C.C. § 2–207.[3] When applying this provision, this Court has noted that Section 2–207 is "one of the most important, subtle and difficult in the entire Code" and that to correctly apply it, "the facts presented must be reconciled, step-by-step, with various provisions of U.C.C. s. 2–207." *Boese–Hilburn Co. v. Dean Machinery Co.*, 616 S.W.2d 520, 523 (Mo.App. W.D.1981) (quotation omitted). Accordingly, we assess Seller and Buyer's sales agreement under each subsection of Section 2–207 to determine when the cargo's title and risk of loss transferred from the Seller to the Buyer.

■ First, we determine whether Buyer and Seller formed a valid contract under Section 2–207(1). Continental impliedly argues, and the trial court apparently agreed, that there was no valid written contract or agreement within the meaning of Section 2–207(1), thus, triggering application of Section 2–207(3). We disagree. Applicable case law supports a finding that Seller's sales contract and Buyer's purchase agreement formed a valid sales contract through written offer and acceptance, thus triggering application of Section 2–207(2).

■ Seller's sales contract constituted an offer. Because the Code does not define the term "offer," the common law definition applies. U.C.C. § 1–103; *Brown Mach.*, 770 S.W.2d at 419. "An offer is made when the offer leads the offeree to reasonably believe that an offer has been made." *Brown Mach.*, 770

**3.** Although not yet enacted in Missouri, a revised Section 2–207 was promulgated in 2003 by the National Conference of Commissions on Uniform State Laws. The original Section 2–207 was devised to address instances where, as here, a written offer and acceptance contained different or additional terms—commonly referred to as "battle of the forms." Section 2–207, however, has resulted in a plethora of conflicting court decisions and has been described as "arguably the greatest statutory mess of all time." Mark E. Roszkowski, *Symposium on Revised Article 2 of the Uniform Commercial Code—Section–by–Section Analysis*, 54 SMU L. Rev. 927, 932 (Spring 2001) (quoting Letter from Grant Gilmore, Professor, to Robert Summers, Professor, Cornell University School of Law (September 10, 1980), reprinted in Richard E. Speidel et at., Teaching Materials on Commercial and Consumer Law 54–55 (3d ed.1981)). Revised Section 2–207 abandons the "battle of the forms" approach in its predecessor and provides that when a contract is: (i) evidenced by the parties' conduct; (ii) formed by offer and acceptance, or (iii) formed in any manner that is confirmed by a record that contains additional or different terms than those in the contract being confirmed, the terms of the contract consist of: "(a) terms that appear in the records of both parties; (b) terms, whether in a record or not, to which both parties agree; and (c) terms supplied or incorporated under any provision of this Act." U.C.C. § 2–207 (2003).

S.W.2d at 419. Seller's sales contract, which described, among other things, the goods to be shipped, the quantity, the price, and the shipment date, was sufficient to apprise Buyer of Seller's offer to contract. *Cf. id.* (holding that even "price quotes, if detailed enough, can amount to an offer creating the power of acceptance[.]").

Buyer's purchase agreement constituted a valid acceptance of Seller's offer. Section 2–207(1) provides that "[a] definite and seasonable expression of acceptance . . . operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." U.C.C. § 2–207(1). Buyer's unconditional purchase agreement, which agreed to the same essential terms stated in Buyer's sales contract was a "seasonable expression of acceptance" forming a binding contract. The fact that the purchase agreement contained a risk of loss term different from that of the offer does not preclude the purchase agreement from constituting a valid acceptance. *See, e.g., Boese–Hilburn Co.,* 616 S.W.2d at 525.

Having identified the sales contract and purchase agreement as the parties' respective offer and acceptance, we proceed to Section 2–207(2). Under Section 2–207(2), additional or different terms in an acceptance "are to be construed as proposals for addition to the contract." U.C.C. § 2–207(2).[4] Between merchants,[5] such additional or different terms become part of a contract unless "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of this is received." *Id.* The record reveals that Seller's sales contract did not limit acceptance to its terms and Seller did not object to the different risk of loss term in Buyer's purchase agreement. As such, the risk of loss term in Buyer's purchase agreement became part of the contract unless the term "materially altered" the contract.[6]

Under the Section 2–207(2), an acceptance's different or additional term will "materially alter" the contract when it "result[s] in surprise or hardship if incorporated without express awareness by the other party." *Boese–Hilburn Co.,* 616 S.W.2d at 528 (quoting U.C.C. § 2–207 cmt. 4) (internal alteration added). The burden of proving that a term is a "material alteration" falls on the party opposing the inclusion of the additional or different term. *See Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.,* 215 F.3d 219, 223–24 (2d Cir.2000) (and the cases cited therein).

Though no Missouri court has expressly addressed the issue, a majority of courts

4. We note that, although U.C.C. § 2–207(2) only expressly references *"additional"* terms and § 2–207(1) holds that an acceptance is valid even when it contains "terms *additional* to or *different* from those offered", Missouri courts have held that the applicability of U.C.C. § 2–207(2) does not turn upon a characterization of the varying terms of an acceptance as "additional" or "different." *Boese–Hilburn Co.,* 616 S.W.2d at 527 (citation omitted). Accordingly, the *different* risk of loss term contained in Buyer's acceptance is assessed under U.C.C. § 2–207(2).

5. Neither Seller nor Continental disputes the fact that they are statutory "merchants" under the U.C.C. § 2–104(1).

6. Continental, in its brief, notes that Seller's offer was a form document that was not signed by Buyer. Standing alone, these facts, however, have no legal significance under Section 2–207(2).

have held that the question of materiality, under Section 2–207(2), is generally a question of fact determined by the expectations of the parties and the particular facts of the case. *See Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1008 (7th Cir.1996) ("[T]he thrust of our prior decisions analyzing the materiality of additional terms counsels against an across-the-board categorical approach to the materiality question. Instead, we have viewed the question of materiality as invoking an inquiry into the circumstances of the parties' relationship, expectations, and course of dealing."); *Hatzlachh Supply Inc. v. Moishe's Elec's, Inc.*, 828 F.Supp. 178, 183 (S.D.N.Y.1993) (concluding that "modern day approach favors a case-by-case materiality determination, focusing on the degree of 'surprise' or 'hardship' imposed upon the nonassenting party."), *order vacated on other grounds*, 848 F.Supp. 25 (S.D.N.Y.1994), *aff'd*, 50 F.3d 4 (2d Cir. 1995).[7] In holding that materiality is a fact question, these courts have also recognized that the question of materiality is not suitable for summary judgment. *See ICI Australia Ltd. v. Elliott Overseas Co.*, 551 F.Supp. 265, 269 (D.C.N.J.1982) ("The courts have generally held that whether a particular clause materially alters an agreement is a question of fact to be resolved at trial, and not a matter suitable for summary judgment.").

▬ Applying the approach advanced by the majority of courts, we agree that the question of materiality under U.C.C.

§ 2–207(2) is generally a question of fact and is not appropriate for summary judgment. Thus, at this stage in the litigation, we do not determine whether Buyer's different risk of loss term "materially altered" the parties' contract, and are therefore unable to conclude, as a matter of law, whether Seller held the cargo's title and risk of loss at the time the cargo was damaged. Accordingly, the trial court erred when concluding that "[p]ursuant to applicable U.C.C. Rules and evidence presented, the title and risk of loss transferred at the time of loading [Carrier's] barges and before the loss herein occurred[,]" and summary judgment in favor of Continental cannot be affirmed on this basis.

As noted above, Continental argues for the application of Section 2–207(3), which provides that terms to which the parties do not agree will be supplemented by the default provisions of the Code. Section 2–07(3) reads:

> Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale *although the writings of the parties do not otherwise establish a contract.* In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

U.C.C. § 2–207(3) (emphasis added).

▬ Section 2–207(3) expressly provides that its application is limited to in-

---

**7.** Some courts have recognized that certain contract terms—e.g., warranty, arbitration, and indemnity clauses—result in such "surprise or hardship" that they "materially alter" a contract as a matter of law. *See Bayway Refining*, 215 F.3d at 224 ("Certain additional terms are deemed material as a matter of law. For example, an arbitration clause is *per se* a material alteration in New York because New York law requires an express agreement to

commit disputes to arbitration."); *Palmer G. Lewis Co., Inc. v. ARCO Chemical Co.*, 904 P.2d 1221, 1229–30 (Alaska 1995) (concluding that indemnification and warranty clauses are material as a matter of law). However, we have found no cases which held that the type of title and risk of loss term in this case materially altered a contract within the meaning of Section 2–207(2) as a matter of law.

stances where the writings of the parties do not establish a valid contract and the parties nevertheless act as if a contract exists. *Id.* In such cases, courts will apply Section 2–207(3) to enforce the sales contact and use the supplementary provisions of the Code to supply the terms not agreed upon by the parties. In this case, however, Section 2–207(3) is inapplicable because, as discussed above, Seller's sales contract and Buyer's purchase agreement established a valid written contract under Section 2–207(1). *Cf. PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.,* 225 F.3d 974, 982 (8th Cir.2000) (holding that the offeree's writing "was not a valid acceptance under UCC § 2–207(1), [but] that the parties nonetheless created a contract under UCC § 2–207(3) through their subsequent conduct[.]"). Accordingly, Continental's reliance on—and the trial court's apparent application of—Section 2–207(3) is misplaced and does not support summary judgment in favor of Continental.[8]

### B. Are There Alternative Theories Supporting the Trial Court's Grant of Summary Judgment?

■ Continental presents three alternative theories in support of its motion for summary judgment. Specifically, Conti-

nental argues that the trial court's judgment should also be sustained on the grounds that: (1) other parties insured the cargo, (2) Seller failed to give notice of the shipment of cargo, and (3) Seller voluntarily refunded Buyer's payment. Because "we are to affirm the trial court's grant of summary judgment for the respondent if the same is correct under any theory supported by the record developed below and presented on appeal," *Wills v. Whitlock,* 139 S.W.3d 643, 652–53 (Mo.App. W.D. 2004) (quotation omitted), we address the additional theories advanced by Continental.

### 1. "Other Parties" Insured the Cargo

■ Continental asserts that it is entitled to summary judgment as a matter of law because other parties insured the cargo. In support of this point, Continental relies on an exclusion in the insurance policy which provides:

> It is specifically understood and agreed that where the Shippers and/or Owners of the cargo and/or other parties insure the cargo, such shipments are not also covered by this policy, in such cases, is not to be construed as excess, double, prior or simultaneous insurance.

**8.** We note that Continental, in addition to arguing for the application of Section 2–207(3), also argues at length about the Code's presumption for "F.O.B. shipment" contracts, which, like the terms in the purchase agreement, would shift the risk of loss to Buyer at the time the cargo was loaded upon the barges in New Orleans. *See* U.C.C. § 2–503 cmt. 5; *Windows, Inc. v. Jordan Panel Sys. Corp.,* 177 F.3d 114, 117 (2d Cir.1999). Specifically, Continental claims that because the Buyer and Seller's contractual documents do not agree as to when risk of loss transferred, the Code's presumption for "F.O.B. shipment" contracts is applicable. Continental's argument, however, reflects a misunderstanding of the Code's presumption for "F.O.B. shipment" contracts. A contract will be con-

strued as a F.O.B. shipment contract *unless* the parties "expressly specify" otherwise. *Windows, Inc.,* 177 F.3d at 117; *see also* 1 J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 5–2 at 341 (5th ed. 2006) ("[A] contract which contains neither an F.O.B. term nor any other term explicitly allocating loss is a 'shipment' contract."). In other words, the F.O.B. presumption is only applicable in instances where the terms of the contract fail to expressly address the transfer of risk of loss. Under the instant facts, both Seller's sales contract and Buyer's purchase agreement "expressly specified" when the risk of loss transferred, and consequently, those express terms will not be superseded by the Code's presumption for F.O.B. shipment contracts.

■ "When an insurance company relies on a policy exclusion to assert noncoverage, it has the burden of proving that such an exclusion is applicable, and we will construe the exclusion clause strictly against the insurer." *Sexton v. Omaha Property & Cas. Ins. Co.*, 231 S.W.3d 844, 848 (Mo.App. S.D.2007) (quotation omitted). The language of the exclusion relied upon by Continental provides that shipments insured by other parties are "not also covered" by Continental's policy and that Continental's policy is not "excess, double, prior or simultaneous insurance." Essentially, the exclusion operates to preclude coverage when other insurance obtained by other parties would also cover Seller's claimed loss. Accordingly, for Continental to establish the applicability of this exclusion for summary judgment, Continental must offer undisputed facts sufficient to prove that other parties insured the cargo at issue.

Continental contends that the undisputed facts show that Carrier and Buyer obtained insurance that covered the cargo. The record, however, reveals that, in its interrogatory answers, Carrier admitted only to having insurance for "River Cargo" that covered "the type of loss" claimed by Seller. An examination of the terms of Carrier's River Cargo insurance policy further reveals that it does not expressly cover loss to cargo, but only extends coverage to Carrier's contractual liability. The only facts in support of Buyer's alleged insurance are found in the deposition testimony of Buyer's representative admitting that Buyer "had a cargo policy that was in effect at the time" of loss. Buyer's actual insurance policy was not made a part of the record. The above facts do not dispose of the issue of whether the other parties actually insured the loss at issue. As such, Continental is not entitled to summary judgment as a matter of law under these facts. Point denied.

### 2. Seller's Failure to Give Notice of Shipment

■ Continental claims that it is entitled to summary judgment because Seller failed to provide it notice of the shipment of cargo, which was a condition of coverage under the policy. Specifically, the policy provided:

> It is a condition of this insurance that the Assured is bound to declare to his Insurance Broker or Agent, for transmission to this Company as soon as practicable after it is known to the Assured, each and every shipment coming within the terms hereof. . . .

An insured's failure to provide its insurer with timely notice, as required by the policy, must be raised by the insurer as an affirmative defense. *Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 821 (Mo. banc 1997). An affirmative defense not properly raised in the defendant's answer will not be considered in a motion for summary judgment. *Glasgow Enter's., Inc. v. Bowers*, 196 S.W.3d 625, 630 (Mo.App. E.D.2006). Because Continental failed to raise Seller's failure to declare the shipment as an affirmative defense in its answer, the defense is waived.

### 3. Seller's Voluntary Payment

■ Continental contends that it is entitled to summary judgment because the policy does not cover the loss claimed due to Seller's receipt of payment for the cargo and its voluntarily refund of the payment to Buyer. To support its position, Continental relies on *Hamiltonian Federal Savings & Loan Ass'n v. Reliance Ins. Co.*, 527 S.W.2d 440 (Mo.App.1975) and *Louisiana Farm Supply Co. v. Federal Mutual Ins. Co.*, 409 S.W.2d 239 (Mo.App.1966). Both of these cases, however, are distinguishable from the case at hand.

First, Continental relies on language from *Hamiltonian Federal Savings & Loan,* which states that "[a]n indemnity contract against losses does not cover losses for which the indemnitee is not liable to a third person and which he improperly pays as a voluntary payment." 527 S.W.2d at 444. There, the court found that because the plaintiff savings and loan had negligently dispensed money to a third party which it had no obligation to pay, it could not recover on its indemnity bond for the amount improperly paid. *Id.* at 444–45. Conversely, in this case, whether Seller had an obligation to refund Buyer's purchase price has not yet been determined. Under the U.C.C., if the seller holds the risk of loss when the sold goods are damaged by no fault of either party, the buyer may avoid the contract and seek restitution for the purchase price already paid. *See* U.C.C. §§ 2–613, 2–711(1). Consequently, Seller's obligation to reimburse Buyer is contingent on whether Seller held the risk of loss at the time the cargo was damaged, which, as discussed above, depends on whether the different risk of loss term in Buyer's acceptance was a "material alteration" under U.C.C. § 2–207(2). Therefore, it cannot yet be determined whether Seller's payment to Buyer was "improper," and, accordingly, summary judgment for Continental cannot be sustained on this theory.

Second, Continental cites *Louisiana Farm Supply* in which one of the conditions provided in the relevant insurance policy expressly declared that "[t]he insured shall not, except at his own cost, voluntarily make any payments, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident." 409 S.W.2d at 240. The court affirmed the grant of summary judgment in favor of the insurer finding that, among other things, the insured, by making voluntary payments to its customers without first notifying the insurer, had not satisfied the policy's condition precedent. *Id.* at 240–42. In contrast, Continental fails to identify a condition in the instant policy precluding Seller from making voluntary payments, and an examination of the policy reveals that no such condition exists. Because Continental's policy did not preclude Seller from making voluntary payments, Continental is not entitled to summary judgment under this theory.

### Conclusion

Because summary judgment in favor of Continental cannot be sustained on the grounds articulated by the trial court or the alternative theories advanced by Continental, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

KURT S. ODENWALD, P.J., and GLENN A. NORTON, J., Concur.