Francis GRAHAM, Respondent,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

**No. ED 97421.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 1, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 20, 2012.

Application for Transfer Denied
Sept. 25, 2012.

Scott C. Harper, Aaron I. Mandel, St. Louis, MO, for appellant.

Thomas G. Morrissey, Springfield, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The defendant, State Farm Mutual Automobile Insurance Company, appeals the grant of summary judgment and award of $100,000 entered by the Circuit Court of St. Louis County in favor of the plaintiff, Francis Graham. We hold that the State Farm policy language in this case is clear and unambiguous, providing underinsured motorist coverage only to the extent that the State Farm policy limits exceed those of any primary underinsured motorist coverage. Thus, because the primary underinsured motorist coverage exceeded the State Farm policy limits, the trial court erred in granting summary judgment for $100,000 in favor of Graham. We reverse and remand.

## Factual Background

Graham was riding in a vehicle owned by Laurence Green in Hidalgo County, Texas when the Green vehicle was involved in an accident with a vehicle operated by Abbie Munoz. The Munoz vehicle was covered by an automobile liability policy issued by Allstate, and Graham settled with Allstate for the policy limits of $25,000. A Travelers policy applied to the Green vehicle as primary coverage, and included coverage with limits of $100,003 per person for injuries sustained as the result of an accident with an underinsured motorist. Graham settled with Travelers for the policy limits of $100,003.

At the time of the accident, Graham was a named insured on a State Farm automobile policy. According to the declarations page under "Limits of Liability–W–Each Person, Each Accident," the State Farm policy provided underinsured motorist coverage with limits of $100,000 per person. The underinsured motorist coverage provisions of the State Farm policy provide in relevant part:

> We will pay damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an ***underinsured motor vehicle.***

\*    \*    \*

### Limits of Liability

#### Coverage W

1. The amount of coverage is shown on the declarations page under "Limits of Liability–W–Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages, including damages for care and loss of services, arising out of and due to ***bodily injury*** to one ***person*** . . . .

\*    \*    \*

5. The most we pay will be the lesser of:

a. the difference between the amount of the *insured's* damages for *bodily injury,* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury;* or

b. the limits of liability of this coverage.

\* \* \*

**If there is other Underinsured Motor Vehicle Coverage**

\* \* \*

3. If the *insured* sustains *bodily injury* while *occupying* a vehicle not owned or leased by *you, your spouse* or any *relative,* this coverage applies:

a. as excess to any underinsured motor vehicle coverage which applies to the vehicle as primary coverage, but

b. only in the amount by which it exceeds the primary coverage.

Graham filed an action asserting a claim for underinsured motorist coverage and for declaratory judgment against State Farm in Greene County, Missouri.[1] The Circuit Court of Greene County transferred the case to St. Louis County, where the parties filed a joint statement of uncontroverted material facts. The parties agreed that, as a result of the accident, Graham sustained damages for bodily injury that he would be legally entitled to collect from the owner or driver of an underinsured motor vehicle in an amount exceeding $225,003. The parties then filed cross-motions for summary judgment on the issue of whether Graham was entitled to recover under the terms of the State Farm policy for underinsured motorist coverage.

The trial court granted Graham's motion for summary judgment, denied State Farm's motion, and entered judgment for Graham in the amount of the State Farm policy limits of $100,000. State Farm appeals.

*Standard of Review*

Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of a summary judgment is purely a question of law, and our review is essentially *de novo. Id.*

*Discussion*

■ On appeal, State Farm claims the trial court erred in entering summary judgment in favor of Graham because the State Farm policy clearly and unambiguously states that its limits are excess to other underinsured motorist coverage only to the extent they exceed other underinsured motorist coverage. State Farm argues that the policy's provision concerning other insurance is not inconsistent with its language concerning limits of liability. Graham counters that the policy's language concerning the limit of liability appears to grant coverage while the provision regarding other underinsured coverage takes it away, thus creating an ambiguity that must be resolved in favor of coverage.

State Farm points to this Court's decisions in *State Farm Mut. Auto. Ins. Co. v. Sommers,* 954 S.W.2d 18 (Mo.App. E.D. 1997), and *Buehne v. State Farm Mut. Auto. Ins. Co.,* 232 S.W.3d 603 (Mo.App.

---

1. Graham also sued the insurance agent who sold him the State Farm policy for breach of contract, but later dismissed his action against the agent.

E.D.2007), wherein we examined virtually identical State Farm policy language, and in *Sommers,* addressed a similar argument made by the insured.

■ An ambiguity exists when the meaning of the contract language is uncertain, indistinct, or duplicitous. *Sommers,* 954 S.W.2d at 19. "A court may not create an ambiguity, but must enforce the contract as written, absent a statute or public policy requiring coverage." *Id.* No public policy requires underinsured motorist coverage in Missouri, *id.,* nor is there any statutory requirement for such coverage, *Buehne,* 232 S.W.3d at 606. Therefore, the contract between the insured and the insurer determines the existence of coverage and its limits. *Id.* at 606–07.

Examining policy language virtually identical to that at issue here,[2] the *Sommers* Court held that the language concerning the limit of liability in the State Farm policy clearly set forth the most the company would pay for underinsured motorist coverage—either the difference between the insured's damages and amounts paid by others legally liable or the policy's limit of liability. 954 S.W.2d at 19. Thus, the limit of liability set forth the maximum amount that State Farm would pay in plain, unequivocal terms. *Id.* at 19–20. On the other hand, the language concerning other underinsured coverage set limits on the amount that State Farm would pay in addition to the primary underinsured coverage. *Id.* at 20. The Court determined that reading the two sections together did not render the policy ambiguous. *Id.*

The Court explained that the language concerning the limit of liability could not be construed to set an exact, or minimum, amount that State Farm would pay. *Id.* Rather, this provision clearly set the maximum amount that State Farm will pay, while the language concerning other underinsured coverage clearly set forth the criteria for underinsured motorist coverage. *Id.* Thus, the language regarding the limit of liability and that regarding other underinsured coverage were not duplicitous, uncertain, or indistinct. *Id.*

Arguing that *Sommers* and *Buehne* are no longer good law, Graham cites *Jones v. Mid–Century Ins. Co.,* 287 S.W.3d 687 (Mo. banc 2009), for the proposition that the State Farm policy is ambiguous because one provision appears to promise coverage while another takes it away, thus requiring resolution of the ambiguity in favor of coverage. *Jones* is readily distinguishable, however.

First, the policy language at issue in *Jones* differed significantly from that at issue here. *Jones* did not involve a provision limiting underinsured motorist coverage to the amount exceeding primary underinsured motorist coverage. Rather, the *Jones* policy involved language that purported to reduce the amount of underinsured motorist coverage payable when the insured had recovered damages from the tortfeasor. 287 S.W.3d at 691.

The *Jones* policy stated in relevant part as follows.

Limit of Liability

a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in the policy, and the most we will pay will be the lesser of:

   1. The difference between the amount of an insured person's

---

**2.** The only difference between the *Sommers* language and that at issue here is that the words "or leased" have been inserted into the phrase "a vehicle not owned or leased by you, your spouse or any relative" in paragraph 3 of the instant provision regarding other underinsured motor vehicle coverage. ˙ . .

damages for bodily injury, and the amount paid to that insured person by or for any person or organization who is or may be held legally liable for the bodily injury; or

2. The limits of liability of this coverage

b. Subject to subsections a. and c.—h. in this Limits of Liability section, we will pay up to the limits of liability shown in the schedule below as shown in the Declarations.

*Id.* at 690 (emphases removed). The declarations in *Jones* set forth coverage limits of $100,000 per person and $300,000 per accident. *Id.* Subsection f then stated:

f. The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person;

i. by or for any person or organization who is or may [be] held legally liable for the bodily injury to an insured person; or

ii. for bodily injury under the liability coverage of this policy....

*Id.*

A reasonable construction of subsections a and b is that the insurer would pay the full policy limits of $100,000 per person if that is the lesser of the two damage amounts listed. *Id.* at 690–91. The insurer argued, however, that subsection f allowed it to deduct from its coverage any amounts the insured had already received from the tortfeasor. *Id.* at 691. The Court observed that the insurer's construction was at best in conflict with the clear intent of the earlier provisions granting coverage of $100,000 per person, and at worst, misleading. *Id.*

Further, the Court explained, the insurer would never actually have to pay the full amount of underinsured motorist coverage that its policy ostensibly provided. *Id.* at 692. This is so because when an insured sought coverage under the policy's *under* insured motorist provisions—as opposed to coverage under the policy's *un* insured motorist provisions—the tortfeasor by necessity would already have paid something to the insured for bodily injury liability. *Id.* Consequently, the insurer's interpretation of subsection f would make inaccurate and misleading subsection b's statement that "we will pay *up to the limits of liability* shown in the schedule below." *Id.* (emphasis added).

The State Farm policy does not suffer from the ambiguity contained in the *Jones* policy. In the State Farm policy, the limits of liability are not reduced by the amount recovered from the tortfeasor's liability carrier. Instead, the State Farm policy contains a provision regarding other insurance, which provides that the State Farm coverage is excess to primary underinsured coverage only to the extent that the State Farm limits exceed the primary coverage. Furthermore, the language concerning other underinsured coverage does not inevitably mean that State Farm would never have to pay its policy limits on the underinsured coverage as would result from the construction the insurer urged in *Jones*. Had the vehicle in which Graham was a passenger not had any underinsured motorist coverage, State Farm would owe Graham the limits of State Farm's coverage. Had the vehicle in which Graham was a passenger had less than $100,000 in underinsured motorist coverage, then State Farm would owe the difference between the vehicle's underinsured motorist coverage and the limits of State Farm's coverage. Unlike in *Jones*, where the insurer would never have to pay its promised limits, State Farm has no obligation to pay anything here only because the underinsured motorist coverage on the vehicle in which Graham was riding exceeded State Farm's limits of liability.

Graham entered into a contract with State Farm that contained a provision stating that where the insured is occupying a vehicle owned by another, and that vehicle has a policy providing underinsured motorist coverage, the limits of the other policy are primary. The State Farm policy then, clearly and unambiguously, provides underinsured motorist coverage only to the extent that the State Farm policy limits exceed the limits of the primary policy. *Sommers*, 954 S.W.2d at 20. The Travelers policy provided primary underinsured motorist coverage in the amount of $100,003 for the vehicle in which Graham was riding, and Graham settled with Travelers for this amount. Under the State Farm policy, because the limits of the Travelers policy exceeded the limits of the State Farm policy, State Farm has no obligation to make any underinsured motorist payments to Graham. *Buehne*, 232 S.W.3d at 607.

### Conclusion

As explained in *Sommers*, the language regarding the limit of liability and the provision regarding other underinsured coverage are not duplicitous, uncertain, or indistinct. 954 S.W.2d at 20. The Supreme Court's analysis of substantially different policy language and circumstances in *Jones* does not alter this determination. The trial court erred in granting summary judgment against State Farm and in entering judgment in favor of Graham in the amount of $100,000. We reverse and remand for proceedings consistent with this opinion.

KATHIANNE KNAUP CRANE, P.J., and KENNETH M. ROMINES, J., concur.